HENRY BAIER *et al.*

*v.*

FRED SELKE.

*Opinion filed October 24, 1904.*

1. MASTER AND SERVANT—*master not liable for foreman's negligence in performing duties as co-laborer.* A master is not liable for the negligence of his foreman in performing, as a co-laborer of the injured servant, a duty which is not a personal one which the master owes to the servant.

2. SAME—*master liable for foreman's improper exercise of authority.* The master is liable for his foreman's negligent and improper exercise of his authority which causes injury to a servant.

3. SAME—*master liable for negligent performance of personal duties.* The master is liable for the negligent performance of personal duties to his servants delegated to another person as a vice-principal, whether such person is a foreman or common laborer or whatever his position may be.

4. EVIDENCE—*agent's narration of past events does not bind the principal.* A declaration made by a foreman when visiting an injured servant as to circumstances connected with the accident causing the injury is not binding on the master, and cannot be proved except for purpose of impeachment, after proper foundation laid.

*Baier* v. *Selke,* 112 Ill. App. 568, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. R. S. FARRAND, Judge, presiding.

ROBERT B. MITCHELL, for appellants.

R. R. TIFFANY, and ECKERT & McDONALD, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellants, Henry Baier and William Ohlendorf, owned and operated a brewery at Freeport, and the appellee, Fred Selke, was employed by them as a brewer. On the fourth floor of the brew house there was a round iron tub six feet

in diameter and about seven feet high, used for boiling rice. The tub was covered and there was access by a door in the cover. In the center of the tub there was a vertical steel shaft running down through two floors to the main shaft, to which it was connected under the ceiling of the second floor by a clutch. Attached to the shaft in the tub there were iron arms, which revolved with the shaft to stir the rice while cooking. There were also two fixed cross-bars and a steam pipe in the tub. It was the custom to clean the tub after it was used and just before using it again, and in order to make it safe to go into the tub for that purpose it was necessary to throw out the clutch at the bottom of the shaft, so that the shaft and arms would not revolve if the machinery should be started. Jacob Weber was the brew-master, who made and tested the beer and worked with the other men, and was also the foreman, with power to hire and discharge help. On the morning of June 18, 1902, the brewery was short of help, and the only men present were Weber and Selke and the engineer. Selke, who was working in the cellar, was directed by Weber to go up and clean out the rice-tub. The clutch connecting the rice-tub shaft with the main shaft was not disconnected, as it ought to have been to have made the work safe. There were eight clutches in the brewery throwing into connection different parts of the machinery, and they were operated by any of the men employed. If any one found it necessary to use a part of the machinery he would connect it by the clutch, and the man who cleaned the tub usually attended to the clutch connecting that shaft with the main shaft. The machinery could not be stopped inside of the tub, the lever for throwing the clutch being down-stairs. While Selke was working in the rice-tub, Weber, in doing his work, threw in a clutch which connected the main shaft with the engine, and the shaft in the rice-tub not being disconnected from the main shaft, it began to revolve. Selke made an outcry and Weber immediately threw out the clutch, stopping the machinery, but Selke was severely injured. He brought this suit to recover damages

for his injuries, and from a judgment in his favor for $1000 an appeal was prosecuted to the Appellate Court for the Second District, where the judgment was affirmed.

The immediate cause of plaintiff's injuries was the act of Weber in throwing in the clutch connecting the main shaft with the engine while the rice-tub shaft was connected with the main shaft. Weber testified that he threw in that clutch and threw it out as soon as he heard plaintiff's outcry, and there was no dispute about that. There was no evidence, however, that the act of connecting the machinery was within the duties of the foreman or the authority conferred upon him by the defendants. On the contrary, the evidence was undisputed that whenever any of the men wanted to use a part of the machinery he threw in the clutch that would set it in motion and disconnected it when he got through. So far as appears, that act was the act of a fellow-servant of the plaintiff, for which the defendants would not be liable, and there was no evidence tending to prove the contrary. It did not pertain in any way to the duties of the foreman or to the exercise of authority by him, and the defendants were not in any manner at fault in respect to it.

There was evidence, however, tending to show negligence on the part of Weber for which the defendants would be held responsible. Plaintiff was an experienced brewer, who had been engaged in that business for eight or nine years, but he testified that although he had cleaned the mash-tub and kettles and other things about the brewery, he did not know anything about the rice-tub; that he had never been in it and that he did not know about the connection of the machinery to the rice-tub shaft. His testimony was, that he had worked the lever controlling the power for the malt house but had never worked the clutch in question; that Weber directed him to clean out the rice-tub; that he went to the tub and commenced to clean outside the door, when Weber said: "Don't make hocus pocus outside; go right in; everything is ready;" that plaintiff looked in, and Weber said: "Just go in; that don't bite you; the machinery don't

start up there;" that Weber said everything was all right in the rice-tub, and that plaintiff went in and commenced to clean the inside of the tub, when the machinery started. This evidence tended to show a negligent and improper exercise of authority over the plaintiff by Weber, conferred upon him as foreman by the defendants. If Weber ordered the plaintiff into the rice-tub with assurances of safety when the shaft was not disconnected and the machinery was liable to be started with a certainty of injuring the plaintiff, the defendants would be responsible for the consequences, provided the plaintiff was ignorant of the danger and was himself in the exercise of ordinary care. There was a sharp and irreconcilable conflict in the evidence as to whether such an order was given and whether Weber was guilty of any negligence in directing the plaintiff to clean out the tub. There was testimony that plaintiff said he forgot to throw out the clutch before going into the tub, and Weber contradicted him in respect to the alleged order. Weber's testimony was, that he did not say any of the things which were attributed to him by the plaintiff, and he testified that he said nothing except to go up and clean the rice-tub; that it was plaintiff's duty to throw out the clutch, and that the accident resulted from his neglect. There was some competent evidence offered in rebuttal affecting the credibility of Weber, and upon the face of the record the jury might have found either way on the question of the negligence of the foreman.

In view of the testimony and the admitted act of Weber in throwing in the clutch and setting the machinery in motion, it was important that the jury should be correctly instructed as to the liability of defendants for his acts. The fifth instruction given at the instance of the plaintiff directed the jury to find the defendants guilty if they believed, from the evidence, that the plaintiff was injured, as charged in his declaration, through the negligence of the foreman while he was acting as such foreman and while plaintiff was exercising reasonable and ordinary care for his own safety, and advised the jury that in such case the negligence of the fore-

man was the negligence of the defendants. This instruction might not be objectionable where it could not be applied to some act for which the defendants would not be responsible, but in this case there was evidence of the act of Weber in connecting the machinery while he was foreman of the brewery, which was the direct cause of the injury but for which the defendants were not responsible. The instruction referred the jury to the declaration, and the only negligence charged in the first and third counts of the declaration was that the defendants negligently permitted the machinery in the tub to be connected with the main machinery while the plaintiff was in the tub, thereby injuring him. The only thing which the evidence tended to prove for which the defendants would be responsible was the alleged improvident and improper order to the plaintiff by Weber. The defendants were not responsible for every act of Weber during the period that he acted as foreman of the brewery. He was acting as foreman of the brewery at the time, but he also worked with the other men, and on the morning in question he and plaintiff were working there together. Ordinarily, where two or more persons are working together one of them has some supervision and control of the work, but that does not render the master liable for everything that he does. It is only where the negligent and improper exercise of authority conferred upon the superior servant by the master causes injury to another servant that the master is liable. Although one servant may have authority over others, the master is not liable for his negligence in the performance of his duties as a co-laborer with the other servants, but the master is responsible for the negligent exercise of the power and authority over other servants. This was the rule established in *Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288, and it has been consistently followed since. In accordance with that doctrine it was held in *Gall* v. *Beckstein,* 173 Ill. 187, that the master was not responsible for the negligence of a foreman while assisting another servant in lifting barrels of salt from a wagon, but in respect to the exercise

of power by a foreman or superior servant his commands are regarded as the commands of the master.

There is a responsibility of the master which does not depend in any degree upon the rank or authority of the negligent servant and is not to be confounded with the exercise of authority by a superior servant. That is, the responsibility for the acts of a vice-principal representing the master in the discharge of personal duties owing to his servants. Mr. Justice PHILLIPS correctly defined the term "vice-principal" in *Mobile and Ohio Railroad Co.* v. *Godfrey,* 155 Ill. 78, as one who performs personal duties of the master which can not be delegated, such as the duty to provide reasonably safe machinery and appliances and a reasonably safe place in which to work; to provide for inspection and repair of premises and appliances, and to inform immature, ignorant or unskilled servants of the dangers of the situation. These are obligations for which the law holds the master personally responsible, and if he attempts to perform the duties through another, that other stands in the relation of a vice-principal, and the master is responsible whether the vice-principal is a foreman, a common laborer or whatever his position may be. (*Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242; *Libby, Mc-Neill & Libby* v. *Scherman,* 146 id. 540; *Chicago and Alton Railroad Co.* v. *Scanlan,* 170 id. 106; *Hines Lumber Co.* v. *Ligas,* 172 id. 315; *Leonard* v. *Kinnare,* 174 id. 532; *Kewanee Boiler Co.* v. *Erickson,* 181 id. 549.) In this case there was no proof that the defendants themselves were in any manner at fault or that the machinery or appliances were defective or insufficient, and the liability of the defendants for the act of Weber was based only on the ground that he was foreman and improperly exercised his authority as such. The instruction embraced the act of throwing in the clutch which connected the main shaft with the engine and thereby setting the machinery in the tub in motion, as well as the alleged improper order given by Weber as foreman, and the error was not cured by any other instruction. There were other instructions given at the request of the defendants

which correctly stated, in a general way, the rules of law on the subject; but this instruction was a peremptory direction to find the defendants guilty if the facts stated in it were found by the jury to be true.

Complaint is also made that the court erred in overruling objections of the defendants to testimony. The alleged errors in that regard were presented to the Appellate Court in argument, but the opinion of that court shows that they were not considered because the abstract filed there did not show the objections, the rulings and exceptions. The abstract filed in this court shows those matters properly, and whether we would consider them as a ground for reversal or not, the rulings were erroneous. The plaintiff, in making out his case, was allowed to testify, against the objection of defendants, that Weber came to see him at his house while he was confined to his bed, some time after the injury, and said that he forgot to throw out the clutch; that he was a man short and forgot all about it, and that he had so much to do he left the rice-tub and forgot to throw it out of gear. Plaintiff was also allowed to prove by another witness that after the accident Weber told him that plaintiff got hurt in the rice-tub and that he forgot to turn off the machinery while plaintiff was in there. If what an agent does binds his principal and is therefore admissible in evidence, what he says about the act while he is doing it is also admissible as characterizing or showing the nature of the act. A declaration made concurrently with the act and constituting a part of the *res gestæ* is admissible in evidence, but where it is a mere narration in regard to a transaction already passed it does not bind the principal and cannot be proved. (1 Greenleaf on Evidence, sec. 113; 1 Phillips on Evidence, 201; Story on Agency, sec. 134; *Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 60 Ill. 501; *Phenix Ins. Co.* v. *LaPointe,* 118 id. 384; *Pennsylvania Co.* v. *Kenwood Bridge Co.* 170 id. 645.) Undoubtedly, the jury would understand that the alleged admissions of Weber were binding upon the defendants as evidence that the injury resulted from his negligence,

and it was error to admit the testimony. The evidence could only be competent as affecting the credibility of Weber as a witness, after a proper foundation had been laid by calling his attention to the time and place of the alleged statement.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*