## Frank Y. Allen v. Western Electric Company.

### Gen. No. 12,900.

1. MINOR—*when in action for personal injuries governed by rules applicable to adults.* A minor whose experience and intelligence shows him to have arrived at full discretion, is, with respect to the obligation to exercise due care for his own safety, bound by the same rules as are adults.

2. FELLOW-SERVANTS—*who are.* Co-servants engaged in a common employment at the time of an accident are fellow-servants within the law.

3. MASTER—*character of machinery required to be furnished by.* A master is required only to exercise reasonable care in furnishing machinery reasonably safe; he is not required to supply machinery of the best or the most approved kind, nor machinery which is absolutely safe.

4. NEGLIGENCE—*when proof of, incompetent.* Proof of negligence not charged or relied upon as a ground of recovery is not competent.

5. AMENDMENT—*when refusal of leave to make, not abuse of discretion.* It is not an abuse of discretion to refuse to allow the plaintiff to amend his declaration by the statement of an entirely different ground for recovery after the court has ruled upon a motion to direct a verdict and is about to give a peremptory instruction.

Action on the case for personal injuries. Error to the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed January 7, 1907. Rehearing denied January 17, 1907.

**Statement by the Court.** The parties to this cause will be designated both in this statement and the opinion which follows as plaintiff and defendant without any suffix.

Plaintiff, when a lad sixteen years of age, on leaving school entered the employment of defendant, a manufacturer of electric supplies on an extensive scale. At first plaintiff sanded and painted dynamos and motors, and then acted as errand boy, and afterwards did wiring around switchboards and on motors and generators. Until four months before he met with the accident complained of he did "straight wire

Allen v. Western Electric Co.

work," and during that four months he wound wire on a lathe. The plaintiff lost one of his fingers March 7, 1902, when he was upwards of nineteen years of age and after he had been employed by defendant something less than three years. The manner of the happening of the accident is about as follows:

Plaintiff was assisting in winding wire to make coils for arc lights. The coil was made from "Wolfin wire, being a mixture of steel and German silver." It was wound on what is termed an "arbor." The wire wound into these coils is very stiff. The arbor is a Bessemer steel rod about three-eighths of an inch in diameter. The arbor fitted on the inside of the coil as it was being wound. Plaintiff was working with a spacer back of the lathe. Olsen, a foreman of the department, was working with plaintiff back of the lathe feeding wire over it to him, and the witness Paul Messeine standing at the end of the arbor holding the arbor with the "tail stock," which was at the end of the lathe. The first time plaintiff used a spacer was three months before the accident. Olsen had at that time instructed plaintiff as to its use, the method and manner of working it in winding wire for arc coils. At first plaintiff experienced some difficulty in working with the spacer, but after receiving instructions from Olsen was able to work with it successfully. A spacer is used to keep successive turns of the spiral coil equi-distant from each other. The spacer used by plaintiff consisted of a piece of wire one-sixteenth of an inch in diameter and sixteen inches long, bent upon itself in the middle so as to form a narrow V-shaped loop eight inches long, with each of the ends formed into a small ring three-quarters of an inch in diameter. Plaintiff worked the spacer by putting a finger into each ring and threaded it over the loose end of the wire to be wound, and then over the arbor, so that the spacer lay on the arbor between the last turn of the spiral coil and the wire to be fed on the arbor. When the spacer was in this position the

lathe was started and as the wire was fed on, the spacer kept each successive turn of the spiral coil separated as it came on by the diameter of the spacer from the preceding turn. As the winding of the coil proceeded the spacer was moved along and kept between the last completed turn and the new turn coming on. The lathe when running free made about two hundred revolutions a minute. Whenever there was a kink in the wire the lathe was stopped and the wire fed by hand, during which process the lathe was turned by pulling a belt with the hand, the purpose of which was to prevent the binding of the spacer by the catching of the kink. On five different occasions plaintiff had worked with a similar spacer doing the same kind of work, and not until the accident in question did the spacer ever catch on the wire. On the morning of the accident plaintiff, at the direction of Olsen, went to work with the spacer. The wire for the coil was laid on the floor. As the wire was used, it came up in a spiral, the lathe being stopped several times on the morning of the accident to straighten out kinks in the wire. Two workmen named Nix and Simonson were stationed between Olsen and the coil on the floor to keep it straightened. They let the wire pass through their hands to those of Olsen. The wire was ten feet from the lathe. Olsen and plaintiff faced each other, and there was nothing between them to obstruct the view of one from the other. At the time of the accident plaintiff held the spacer with the middle finger of his left hand through the rings. He was standing, his hands being on a level with his stomach. In this manner work proceeded for about twenty minutes before the accident occurred, several stops being made to adjust the kinks encountered in the winding process. About this time the lathe was again stopped and Nix and Simonson adjusted a kink in the wire. Olsen thereupon started the lathe and commenced to feed the wire as before, whereupon, after five or six feet of wire had been run, a kink passed Olsen,

Allen v. Western Electric Co.

jumped over the top of the spacer and bound the spacer so tightly upon plaintiff's finger then in the rings of the spacer, that he lost it. Plaintiff says in his testimony that Olsen did not call his attention at any time to any danger in connection with the spacer in winding the coil. That he never thought of any danger. Never knew of the spacer catching before. On cross-examination plaintiff said his work was to do what he was called upon to do by the various parties, and assist generally in the work which came from time to time. Had done similar work while he was in the repair department, on shop lamp coils, and had done that sort of work before the injury three or four months.

The following occurred on cross-examination of plaintiff (R. p. 36):

Q. "And you knew of course if your finger was drawn down against the arbor it would injure it?

A. Certainly I knew that.

Q. That is, you knew you would get hurt if your finger got against the arbor?

A. Certainly.

Q. That was perfectly apparent, was it not?

A. Yes.

Q. Now you also knew that if this wire which was being fed there—the wire on either side of the spacer —the loops had any breaks or unevenness, and that sort of thing in it, it was liable to catch the wire?

A. I never thought of that.

Q. If you had looked at it you would have seen it?

A. Yes, sir."

The spacer in use by plaintiff on the occasion of his injury was precisely the same as those used by him previously when doing the same kind and character of work.

The declaration consists of four counts. In the first count it is charged in substance that a duty rested upon defendant to furnish plaintiff a spacer reasonably safe for doing the work in hand, and that defendant

failed in so doing. In the second count the negligence of defendant charged is in its ordering plaintiff to work with a dangerous spacer. The third count places the negligence upon defendant in its failure to warn plaintiff of his liability to injury in the use of the spacer; and the fourth count avers defendant's negligence in failing to furnish plaintiff with machinery or other means reasonably fit for feeding the wire upon the revolving arbor. To this declaration the defendant filed a plea of not guilty. At the conclusion of the plaintiff's evidence the defendant asked, and the trial court gave, an instruction directing the jury to find the defendant not guilty. Objection and exception to this action of the court was duly preserved, as also to its subsequent action in overruling a motion for a new trial and rendering judgment against the plaintiff for costs. To reverse this judgment plaintiff brings the record to this court for review, and assigns errors thereon, the principal one of which challenges the action of the trial court in directing a verdict for defendant and the entry of judgment thereon.

Francis J. Wooley, for plaintiff in error.

Holt, Wheeler & Sidley, for defendant in error.

Mr. Justice Holdom delivered the opinion of the court.

It appears from the record that the learned judge at *nisi prius* grounded his ruling in directing a verdict for the defendant on the theory as a matter of law that plaintiff assumed the risk of the dangers which resulted in his injury, and that if there was any negligence at all it is imputable to a fellow-servant of the plaintiff, and not to defendant.

Plaintiff, at the time in question, was upwards of nineteen years of age, and had been in and about the works of defendant in the vicinity of three years, and

for more than two years had been employed in and about the department in which he was injured. He admits that his work consisted in doing what he was called upon to do, and to assist generally in the work which came in. He had been in the lamp repair department. He was in the dynamo department a year and a half before going to the repair department, where he had been a year or more at the time of his injury. He had worked wiring coils for electric lamps frequently, and was engaged in the same character of work about which he was employed at the time of the accident for three or four months previously. It may, therefore, be assumed, as established by plaintiff's own evidence, that at the time of his injury he was engaged in doing work within the scope of his employment.

Plaintiff was not an immature youth at the time of the accident; neither was he ignorant or unfamiliar with the duties he was discharging at the time of the injury to him. His education continued at school until he passed his sixteenth year. His service with defendant constituted his only employment. From his age, intelligence and experience in the work in which he was engaged, he must be presumed to be possessed of ordinary discretion, with sufficient capacity to avoid danger, and responsible for any negligence resulting from his own conduct, whether to himself or others. His responsibility, must, therefore, be measured by the same rules and governed by the same legal standards as would apply if he was an adult. He is not to be regarded as a minor of tender years, but a minor who has attained to years of discretion. Higgins v. O'Keefe, 79 Fed. Rep. 900; Nagle v. R. R. Co., 88 Pa. St. 35; Palmer v. Harrison, 57 Mich. 182.

The rule announced in Hickey v. Taaffe, 105 N. Y. 26, is controlling here, that "being of an age to appreciate and having full knowledge of the danger, and at the same time being competent to perform the duty demanded from her, the fact that she was a minor

does not alter the general rule of the law upon the subject of employes taking upon themselves the risks which are patent and incident to employment." This rule of law comes with added force here, because of the disparity between the ages of the girl in case, *supra,* she being but fourteen years and six months old when injured, and plaintiff here more than nineteen years of age at the time he was injured.

A fifteen year old girl injured while at work in a laundry was denied redress for her injury because she was held to have a full appreciation and knowledge of the danger resulting in her injury, and to have assumed the risk as one of the hazards of her employment. Jones v. Roberts, 57 Ill. App. 56.

Plaintiff was sufficiently informed in relation to dangers which might be apprehended from his working with the spacer in the winding of wire for coils to be used in arc lamps. He had worked with the same kind of spacer before as on the occasion in question, and at all previous times had done so without any protest or complaint. It was plain to any reasonable mind that if anything happened in the course of the winding of the wire to bind the spacer, the finger of the operator in the double rings of this elongated V-shaped tool was in jeopardy of injury. It is true, such an accident had never happened before; nevertheless, if the lathe did not stop revolving when a kink in the wire was encountered, that which did happen from the condition visible to all engaged in that work, was liable to happen from a failure to stop the lathe. All so engaged were bound to take notice of these apparent dangers and held to assume the risks incident thereto. It is, therfore, pertinent to ascertain whether or not the injury sustained was brought about through the negligence of the defendant or that of a fellow-servant of plaintiff.

The uncontradicted evidence is to the effect that the work in progress at the time of the accident was the winding of wire for coils to be inserted in arc lights.

Those actively engaged in doing this work were Olsen, the foreman of the department, plaintiff, Messeine, Nix and Simonson. There were kinks in the wire which it was known would be encountered in the winding of it. This fact was known to all those working at it. The method adopted by winding from the floor was to meet and overcome the dangers incident to this condition. The stopping of the lathe when a kink hove in sight was prearranged. All so engaged were watching for kinks in the wire. Some had been arrested on their winding way and straightened out. Plaintiff had observed all this. He was fully cognizant of the whole environment. All co-operating in this task had their special work assigned them by Olsen. Olsen assigned himself to a position, and during all that time was working with plaintiff and his fellow employes in the furtherance of the same common object and aiding by his labor to attain the same common result. Olsen was near plaintiff feeding the wire. There was nothing to obstruct the full view of one from the other. All of the persons co-operating in the work were so placed that they could watch and observe each other. If Olsen was negligent in not stopping the lathe and allowing the kink to run upon the arbor, binding the spacer, resulting in the loss of plaintiff's finger, such negligence was that of a fellow-servant of plaintiff. At the time of the accident all co-operating physically, as Olsen was, in the doing of that work were fellow-servants of plaintiff. All being fellow-servants engaged in a common employment at the time, the fellow-servant rule is applicable to and must control plaintiff's claim. Gall v. Beckstern, 69 Ill. App. 617, and 173 Ill. 191; Baier v. Selke, 211 Ill. 512.

A very instructive review of the law covering this branch of the case is found in C. & E. I. Rd. v. Heerey, 203 Ill. 492.

At the time of the accident to plaintiff the customary method of doing the work in hand was being pur-

sued, and, as a matter of fact, the record is silent as to there being any alternative plan ever before adopted in the doing of such work. It was reasonably safe, for plaintiff had previously done the same kind of work in the same way by the same instrumentalities without suffering any injury. He made no complaint of conditions apparent and known to him. He had used theretofore the same tool, the spacer, in doing like work. His safety while so employed rested with himself and the vigilance of his co-workers. It is not a question of a mere safe way or the use of the most improved method, but was the way adopted ordinarily safe in the exercise of due care by the servants of the common master, and the one usual in the doing of such work. It is well settled that the master is not bound to furnish his servants with the safest machinery nor with the best methods for its operation in order to be free from responsibility for accidents resulting from its use. If the machinery furnished is of an ordinary character and can, with reasonable care, be used without injury to the servant, the master has done all the law requires at his hands. Such machinery is not required to be of the best or the most approved kind, nor absolutely safe. All the law requires is that such machinery be reasonably safe. C., R. I. & P. v. Lonergan, 118 Ill. 48.

As the spacer was ordinarily safe, as also the method adopted in doing the work, of which plaintiff was cognizant, defendant was neither obligated to refrain from ordering plaintiff to work with the spacer, nor to warn him of any dangers which might attend its use. In the language of Ryan v. Armour, 166 Ill. 570, "He had ample opportunity to learn all that could have been explained to him respecting the hazards attending the employment." Ward v. Daniels, 114 Ill. App. 354.

Plaintiff contends in argument that a liability rests upon defendant for negligence in changing its method of feeding the wire onto the arbor from a previously

safe to a dangerous method without warning plaintiff of such change.   It is sufficient to here note, as a complete answer to this contention, that the right to recover on such grounds is nowhere charged in the declaration.   This is made manifest by plaintiff seeking, after the close of his case, to amend his declaration by filing an additional count charging such acts as negligence.   Plaintiff was not entitled, as the declaration then stood before the court, to make proof of any such acts.   His rights were circumscribed by the averments of his declaration as it then existed.   C., B. & Q. Rd. v. Bell, 112 Ill. 365. For as said in C. & E. I. Rd. v. Driscoll, 176 Ill. 330: "The rule is a fundamental one, that a plaintiff must recover, if at all, upon the case made by his declaration, and in the application of this rule to actions for negligence plaintiff cannot allege a specific act of negligence and recover upon proof of negligence of a different character."

While it was a matter within the sound discretion of the trial judge to permit the plaintiff to amend his declaration at any time, still it was no abuse of such discretion to deny plaintiff that privilege when asked, as it was, after the closing of his case and the defense had requested the peremptory instruction in its favor which the court subsequently gave.

We have scrutinized the rulings of the court complained about, in rejecting proffered evidence, and are unable to say the court erred in this respect.

The proof of plaintiff does not tend to establish a liability under the averments of the declaration upon defendant to respond to plaintiff for damages growing out of the accident there set out, and the trial court did not err in giving the peremptory instruction to the jury to find the defendant not guilty, and the judgment of the Superior Court is, therefore, affirmed.

*Affirmed.*