## James Duffy v. City of Chicago.

### Gen. No. 13,487.

FELLOW-SERVANTS—*when question as to who are, becomes one of law.* When men of reasonable minds cannot reasonably come to any other conclusion from the evidence, than that a particular servant was a fellow-servant of the plaintiff, the question of fellow-servants becomes one of law for the court.

Action in case for personal injuries. Error to the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed November 11, 1907. Rehearing denied November 21, 1907.

WILLIAM J. LACEY and GEORGE E. GORMAN, for plaintiff in error.

JOHN R. CAVERLY, for defendant in error; EDWARD C. FITCH and JAMES G. CONDON, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is a writ of error to reverse a judgment against plaintiff in error for costs. The plaintiff in error sued the defendant in error for negligence *per quod* he says he was injured. The declaration contains, very unnecessarily, as we think, five lengthy counts, a statement of which we will omit, inasmuch as no question is raised by counsel as to the sufficiency of the declaration, or any variance between it and the evidence. The defendant pleaded the general issue, and the court, at the conclusion of the plaintiff's evidence, excluded the evidence from the jury on the defendant's motion, and instructed the jury to find the defendant not guilty. The jury returned a verdict as directed, and the court, after overruling plaintiff's motions for a new trial and in arrest of judgment, rendered judgment against the plaintiff for costs.

Counsel for plaintiff contend that the court erred in taking the case from the jury, and the question to be decided is, whether the evidence, with all legitimate inferences from it, fairly tends to support the plaintiff's case.

The evidence tends to prove the following facts: The plaintiff was a common laborer and had been in the employ of the city as such from August 12, 1901, till December, 1901, when he quit the city's employ. About March 14, 1902, he applied to the city for work. The city was then engaged in the construction of an intercepting sewer, and plaintiff was directed to report to James Hickey, who was foreman of a gang of men engaged in the construction of the sewer, and to obey his orders. The gang was called the bracing gang and was known to the men as Hickey's gang. Hickey had authority to give orders to the men in the gang, but worked with them as one of the gang in all work which they did. He employed the plaintiff and put him to work pumping water, which work plaintiff did for half a day, when he was ordered by

Hickey to carry stone, which he did for about a day, when he and Patrick O'Mally were directed by Hickey to go into the ditch and dig it out for the stringers, which work they continued at till March 20, 1902, when Hickey called to plaintiff and O'Mally to come up out of the ditch and unload a car. The number of men in Hickey's gang varied from time to time, and at the time in question it consisted of three persons—Hickey, O'Mally and the plaintiff. The car which they were to unload was a flat car, and was loaded with pieces of timber, some 6 by 8 and some 10 by 10 inches, and some of them were 10 feet long and others longer. This timber was used for bracing, in the work of constructing the sewer. The car stood north and south, and there were two piles of lumber on it, one on the south part and one on the north part of the car. The ends of the two piles or tiers, as some of the witnesses call them, were square and came together about the center of the car, so that the length of the two piles was about twenty feet. The timber was kept in place in the car by four stakes. The height of the piles was about seven or eight feet above the car, so that they were higher than one's head when standing on the ground. To unload the car required three men, one on top to throw or roll down the timber, and two on the ground to straighten it out as it fell. Unloading the timber was a part of the bracing work of the bracing gang, and plaintiff, as one of that gang, had assisted in unloading a carload of timber about a week before the accident. When the gang reached the car in question, Hickey got on top of the lumber with a cant-hook in his hand, with which to roll or throw the lumber off, and told plaintiff to take an ax and knock out the stakes on the east side of the car, which plaintiff did, and, when the stakes were loosened by the blows of the ax, O'Mally took them out with his hands and threw them down. Plaintiff worked from the north and to the south end of the car, loosening the stakes. When the

stakes were all out Hickey said to the men, "Duffy, you go to the north end and O'Mally you stay at the south end." The plaintiff then walked along on the east side of and close to the car, toward its north end, and when he was near to the north end of the car two or three of the pieces of timber fell on him from the north pile and injured him. Hickey, at the time, was on the south pile of timber, and had with his cant-hook loosened and thrown up some of the timber on the east side of that pile, when some pieces of the timber fell from the south and some from the north pile.

It is contended by plaintiff's counsel that the plaintiff's injury was caused while he was obeying an order of his foreman, James Hickey, and in consequence of such order. The declaration does not count on the giving of the order to the plaintiff, to go to the north end of the car, as negligence, and we think it manifest that the giving that order was not negligent. It was part of the work of unloading the car to straighten out the timber as it was rolled from the car, and to do this it was necessary for the plaintiff and O'Mally to be at opposite ends of the car. The order did not require the plaintiff to walk so close to the car that timber might fall on him from it after the stakes had been removed, nor was his so walking a natural consequence of the order. He might have walked by a safe way from the south end to the north end of the car.

Hickey, O'Mally and the plaintiff were engaged in the same line of employment, namely, doing bracing work necessary in constructing the sewer, and, at the time of the accident, the particular work which they were doing, viz: unloading from a car timber to be used for bracing, was in that line of employment; and, in addition to this, they were so associated in their work that each could exercise an influence on the others for protection and safety.

Men of reasonable minds could not reasonably come

to any other conclusion from the evidence, than that James Hickey, the foreman, was, in unloading the car, a fellow-servant of the plaintiff. In Baier v. Selke, 211 Ill. 512, 516, this language is used: "Ordinarily where two or more persons are working together, one of them has some supervision and control of the work; but that does not render the master liable for everything he does. It is only where the negligent and improper exercise of authority conferred upon the superior servant by the master causes injury to another servant, that the master is liable," and the court further say: "This was the rule established in Chicago & Alton Railroad Co. v. May, 108 Ill. 288, and it has been consistently followed since." The rule was followed in Chicago Architectural Works v. Nagel, 80 Ill. App. 482, 496. Hickey being a fellow-servant of the plaintiff, in unloading the car, plaintiff assumed the risk of Hickey's negligence, if negligence can be imputed to him. It is not claimed that Hickey was incompetent.

The court did not err in taking the case from the jury and the judgment will be affirmed.

*Affirmed.*