## Joseph Colono, by his next friend, Appellee, v. Consolidated Coal Company, Appellant.

1. MASTER AND SERVANT—*who not fellow-servants.* *Held,* under the evidence, it could not be.said as a matter of law that a boss driver in a coal mine and a servant employed therein in the work of coupling cars, were fellow-servants, but the question of their relations to each other was one of fact for the jury.

2. EVIDENCE—*when admission of conclusions of witness will not reverse.* Notwithstanding certain answers complained of were conclusions, yet it is held in this case that their admission was not error in view of the fact that the reasons for the conclusions were given and that the witnesses upon both sides of the cause gave their testimony in such irregular manner.

3. INSTRUCTIONS—*when incomplete will not reverse.* An instruction which is incomplete will not reverse if it states a correct principle of law as far as it goes and when read with the other instructions given is not misleading.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1908. Affirmed. Opinion filed March 4, 1909.

WISE, McNULTY & KEEFE, for appellant.

F. C. SMITH, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit for personal injuries, claimed to have been received by appellee, while he was employed as a mule driver by defendant in its coal mine.

It appeared from the proofs that appellee, a young man nineteen years of age, was on January 14, 1907, and had been for about a month previous thereto, employed in appellant's mine in St. Clair County. It was his duty to drive a mule and haul in cuts of loaded cars from the north side of the mine to the bottom of the shaft, and take back empty cars. There was an incline of about fifty feet next to the cage, upon which loaded cars were brought and spragged, to be afterwards

gradually moved down onto the cage, where they were hoisted to the surface. As cars were brought onto the incline, they were coupled to the ones already there. The fastenings, consisting of a link and hook, were at the bottom of the cars and above them were bumpers which kept the cars apart. On the day of the accident, there were three or four loaded cars on the track when appellee came in with two more. The driver foreman, who was in charge of the drivers on the north side, some thirteen in number, was standing near by on the track used for empty cars. After the cars appellee had in charge, closed up against the cars ahead of them, appellee stooped down between his first car and the one next to it to hook them together, but before he got them coupled, the cager let the four cars start down the incline, moving the two cars appellee was attempting to hook together, about eight inches apart. Appellee thereupon raised his head between the cars and at the same instant two more cars brought in by another driver, bumped against appellee's cars pushing them forward and his head was caught between the cars he was coupling, and he was severely injured.

It was alleged in the declaration and is claimed by appellee here, that it was the duty of Brayford, the driver foreman, to warn drivers who might be engaged in coupling or uncoupling cars at the bottom of the mine, of the proposed moving of cars and the approach of other drivers with their cars, so as to obviate the danger of collision, while a driver was between the cars; that Brayford negligently failed to perform this duty and by reason of his negligence, appellee received the injuries complained of. There was a plea of the general issue, and appellee obtained a verdict and judgment for $1,000.

Appellant takes the position that appellee, the driver foreman, the other drivers, and the cager, were all fellow-servants and that therefore appellee cannot recover for an injury caused by the negligence of one

or all of them. Appellee, on the other hand, insists that the driver foreman occupied the position of vice-principal to appellant, and that his negligence was the negligence of appellant. It would be impossible, if it were indeed profitable, to review all the authorities cited on both sides, within the scope of this opinion. The rule applicable to the circumstances of this case, however, is well stated in the case of Baier v. Selke, 211 Ill. 512, where it is said: "There is a responsibility of the master which does not depend in any degree upon the rank or authority of the negligent servant and is not to be confounded with the exercise of authority by a superior servant. That is, the responsibility for the acts of a vice-principal representing the master in the discharge of personal duties owing to his servants. Mr. Justice Phillips correctly defined the term 'vice-principal' in M. & O. R. R. Co. v. Godfrey, 155 Ill. 78, as one who performs personal duties of the master which cannot be delegated, such as the duty to provide reasonably safe machinery and appliances and a reasonably safe place in which to work; to provide for inspection and repair of premises and appliances, and to inform immature, ignorant or unskilled servants of the dangers of the situation. These are obligations for which the law holds the master personally responsible, and if he attempts to perform the duties through another, that other stands in the relation of a vice-principal, and the master is responsible whether the vice-principal is a foreman, a common laborer or whatever his position may be."

And in C. & A. R. R. Co. v. May, 108 Ill. 288, in discussing this question of the liability of the master for the negligence of one servant by which another servant is injured, it is aptly said: "Every case in this respect must depend on its own circumstances."

Appellee testified that sometime after he had been employed he went to Grieve, the mine manager, and told him he would not do coupling because he thought it was dangerous; that the empty track was full of

cars and the loaded track had cars on it and there was not room for him to get his mule in between; that Grieve told him he had to do the coupling and appellee thereupon quit work and made complaint to the pit committee, but they decided against him and told him if he went to work there he had to couple cars; that Grieve told him, in reply to the statement that it was dangerous to couple cars there, the driver boss was at the bottom and would look out for appellee as much as he could. Grieve testified, that appellee told him he was not going to couple cars any more because it was dangerous and that after the pit committee decided against appellee and he concluded to go to work, witness said "I told him when he went back I don't think you will get hurt. I don't think there is any reason why you should get hurt;" but said he never told him that the boss driver would look out for his safety as far as he could. In this condition of the evidence it could not be said as a matter of law, that Brayford and appellee were fellow-servants in the sense contemplated by the rule of law, which relieves masters from liability for injuries to one fellow-servant caused by the negligence of another; but the question whether Brayford occupied, under the circumstances, such a position towards appellant as to render it liable for his negligence toward appellee, was rather one of fact for the jury under proper instructions from the court. M. & O. R. R. Co. v. Godfrey, *supra*.

Upon the question whether or not it was the duty and custom of Brayford to notify drivers of danger imminent from starting or approaching cars, while engaged in coupling, there was such a conflict in the evidence that it is difficult to say where the preponderance lay and therefore the verdict of the jury relative thereto should not be disturbed.

Appellant complains that witnesses for appellee were permitted to answer questions as to the cager's duty in regard to giving warning when he started

cars and as to the driver foreman's duty to give warnings or signals of danger to the driver and whether the drivers relied on these warnings, upon the ground that the answers to these questions were merely conclusions of the witnesses. The question whether or not the drivers relied on these signals was plainly one of fact which the witnesses who testified for appellee on the subject and who were drivers themselves, might well know.. The answers to the other questions referred to, were to some extent conclusions of the witnesses, but the reasons for these conclusions were stated by the witnesses and witnesses on both sides of the case were permitted to answer like questions, so that we are of opinion appellant's case was not improperly prejudiced thereby and that there was no reversible error in admitting the answers referred to.

Instruction No. 2 given for appellee and criticized by appellant, is not entirely complete, as applied to the evidence in this case. It however states a correct principle of law as far as it goes and when read with the series of instructions, could not be misleading. Other complaints are made to the giving and refusing of instructions, which do not appear to us well founded and which we do not think it necessary to discuss. We find no sufficient reason shown by this record to warrant us in reversing the judgment of the court below, and the same is therefore affirmed.

*Affirmed.*