### Step Conrad, Appellee, v. Israel Joseph, Appellant.

### Gen. No. 5,675.

1. Master and servant—*counts disproved.* Where plaintiff was employed in a scrap iron yard and injured by a boiler head falling upon him, due to negligent handling thereof by his fellow-workmen, in inserting it into a cutting machine, but the boiler head was immediately thereafter cut without difficulty, judgment on a verdict under a declaration alleging negligence of the master, in the boiler head having been too large, thick, hard, irregular, etc., to be so cut, will be reversed.

2. Master and servant—*fellow-servants.* Although acting in the capacity of a representative of the employer, in ordering a boiler head to be put into a cutting machine, an employe who takes hold of the piece of iron with other employes, lifts it on the projecting shelf, and puts it into the machine, is a fellow-servant with such employes.

Appeal from the City Court of Aurora; the Hon. Edward M. Mangan, Judge, presiding. Heard in this court at the October term, 1912. Reversed with finding of facts. Opinion filed March 12, 1913.

Alschuler, Putnam & James, for appellant.

Richard J. Finn, for appellee.

Mr. Justice Whitney delivered the opinion of the court.

Appellee was injured while working in a scrap iron yard in Aurora. Into this yard were brought all kinds of scrap iron and it was there cut up into suitable sizes for remelting, etc. Among the different kinds of mechanism for this purpose was one known as a shears, operated by electric power. The base of the shears is solid with the front part or jaw that moves up and down, which with the sharp edge of the base makes the cutting tool or shears. This jaw is somewhere from 20 to 24 inches long. Appellee came to work two days before he was injured. He was hurt on the 9th day of February, 1911, while working these shears with other fellow-workmen cutting a boiler head. He claims he never had worked on the machine until he took hold of this boiler head. Appellee's evidence tends to show at least, however, that he had worked on it before the time he was hurt. This boiler head had a flange turned up. Six men brought it to the machine to be cut up. The foreman was not present, and when the foreman was not there, the practice was that the oldest man at the work gave directions. That man on the occasion in question was John Novak. He took hold with the others in putting the boiler head into the shears. The evidence shows that the proper way of putting iron into the shears was for the men to hold the boiler head on the projection of the base from the mouth of the shears, resting it there, and as the upper jaw went up an order was given to shove it into the shears as far as it would go, which was somewhere from 20 to 24 inches, and then the jaw would come down and cut it. Appellee was one of six men and Novak another who had the boiler head on the projection ready to shove it into the shears. According to part of the evidence an order was given to put it in. According to another part, no such order was given. The boiler head as a matter of fact either tipped up so that the flange just projected under the

corner of the knife, or according to other evidence it was put in four or five inches only. The knife did not cut it, but made a mark on the outer edge of the flange. The plate moved up and down and the boiler head was either jerked out of the hands of the six men or they dropped it and it fell to the ground. Appellee was standing in front of the machine and it fell on his toes and injured them. He went away to a doctor and later to a hospital where some of his toes were amputated. Immediately on his leaving the machine the remaining men put the boiler head into the shears, and cut it without any difficulty whatever. Appellee brought this suit to recover damages, and on a jury trial, had returned a verdict for $1,500 and a judgment therefor, from which the defendant below appeals.

The declaration consists of four original counts and two additional counts. The negligence alleged in the four original counts is based on the allegation that the boiler head was "too thick and hard," to be cut in the machine, or was "too irregular, rounded, convex and concave," to be cut in the machine, or was "too thick and too hard," to be cut in the machine, and that appellant knew, or by the exercise of reasonable care ought to have known it; or that the piece of iron was "too rounded, convex and concave," to be cut in the machine, and that appellant knew it, or ought to have known it, and that appellee did not know and was not chargeable with notice of it, and that appellant failed to warn him, etc. All these counts fail of proof because the undisputed proof is that the boiler head was cut by the remaining men, without difficulty, immediately after appellee was injured. The fact that the boiler head was easily cut, disposes of the expert testimony that it was too large and heavy to be cut.

The first additional count charged that appellant by his foreman, ordered appellee to assist in holding onto said machine by hand for the purpose of cutting the same, a piece of iron, which by reason of its size and weight when held on said machine by hand was liable

to kick, jerk, jump and fall off said machine, and injure those working about the same, and that by reason of such negligence said piece of iron kicked, jerked, jumped and fell from said machine onto appellee and injured him. This count does not sustain a recovery because there is neither allegation or proof that the piece of iron was so large or heavy that when held on the machine by hand, it was liable to kick, jerk, jump and fall, and there was neither allegation or proof that appellant knew that fact. The second additional count charged that said piece of iron was too large and too heavy to be cut on said machine, and that by reason of its size and weight when held on the machine by hand, it was liable to kick, jerk, jump and fall from the machine, and endanger those working about the same, and that appellant had notice of these facts, or by the exercise of reasonable care should have had notice, and that appellee did not have notice thereof, and was not chargeable with notice, and that appellant negligently failed to warn appellee, and that said piece of iron while being cut was liable to kick, jump, jerk and fall from said machine and endanger those working on it, and that while appellee was working on said piece of iron on said machine, without warning to appellee, it kicked, jerked, jumped and fell off said machine onto appellee and injured him.

Inasmuch as the remaining five men immediately on appellee being injured, proceeded without difficulty in cutting the piece of iron on the machine and the remaining boiler heads, or plates which were on hand waiting to be cut, no matter what any expert may say about the boiler head being too large or too heavy to be cut upon said machine in that manner, it is proven conclusively by the fact it was cut without difficulty, that it was not too large or to heavy to be cut upon said machine.

There was no proof that in the cutting of any other boiler head, plates or pieces of iron on that machine, it had ever jerked, jumped, kicked or fell off the ma-

chine, and no proof whatever that appellant knew or ought to have known this piece of iron was too heavy, or too large, or too hard, or too concave or convex to be held by hand on said machine while being cut, and that it was liable to jump, jerk, kick or fall off said machine; therefore, in our opinion there can be no recovery. Although Novak acted in the capacity of a representative of appellant in ordering the piece of iron put into the machine, about which order there is a dispute in the evidence, still, when he took hold of the piece of iron with appellee and others and put it in the machine, or lifted it onto the projecting shelf ready to be put in the machine, he was a fellow-servant with appellee. Baier v. Selke, 211 Ill. 512; Gall v. Beckstein, 173 Ill. 187; Duffy v. City of Chicago, 137 Ill. App. 195; Allen v. Western Electric Co., 131 Ill. App. 118.

We think it clear that the cause of the accident was that just the edge of the boiler head was put into the machine before the knife came down. It is a reasonable conclusion from the evidence that no order had been given to put it in the machine, and that the men did not then intend to put it in until the order was given, but got it up close to the knife, ready to be shoved; and the knife then came down and struck on the edge of the flange and thus caused it to jerk; but whether it was put in just that far, or as some of the witnesses say, it was put in four or five inches, neither was the proper way. If it was put on the projecting shelf so that the knife would just strike the flange, or if it was put in four or five inches, in either case, it would be liable to jerk and jump when the knife came down. It should have been kept out of the range of the knife, or it should have been shoved clear into the machine as far as it would go, and then we think it plain that it would not, or could not have fallen out. This condition as shown by the evidence was caused, it seems clear to us, by the negligence of the fellow-servants of appellee, and he cannot recover in such case.

Coming to the foregoing conclusion on questions of fact, renders it unnecessary for us to pass on questions arising upon the introduction or rejection of evidence and on the instructions.

Judgment reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment. We find that the appellant was not guilty of the negligence alleged in the declaration, or any count thereof, and that appellee was injured by reason of the negligence of his fellow-servants, for which the appellant is not liable.