Chicago, Rock Island and Pacific Railway Company

*v.*

Joseph Rathneau.

*Opinion filed February 21, 1907.*

1. Trial—*when refusal to direct a verdict is proper.* Refusal to direct a verdict for the defendant railroad upon the ground that the negligence which caused plaintiff's injury was that of a fellow-servant is properly refused, where there is evidence tending to show that such person was in control of and directing the work of the gang of which the plaintiff was a member, even though there is no evidence that such person had power to hire and discharge the men.

2. Master and servant—*when servant is not bound to disobey foreman.* A servant is not bound, in law, to either refuse to obey the foreman's particular order to do work in a dangerous manner or assume the hazard by obeying, unless the danger is so imminent that a man of ordinary prudence would not have incurred the risk.

3. Same—*liability of the master for representative's negligence.* Where a master authorizes one of his employees to take control of a certain class of workmen in carrying on some particular work, such employee, in directing the men thus under his charge, with respect to the particular work, represents the master and is not a mere fellow-servant of the others; his commands, within the scope of his authority, are, in law, the commands of the master, and if he

is guilty of a negligent or unskillful exercise of his authority, it is the same, in law, as though the master was guilty of such conduct. (*Baier* v. *Selke*, 211 Ill. 512, distinguished.)

4. EVIDENCE—*general objection is not sufficient unless evidence is wholly inadmissible.* A general objection to the admission of evidence is not sufficient to sustain an assignment of error upon its admission, unless the evidence objected to was inadmissible for any purpose.

5. INSTRUCTIONS—*when giving instruction stating abstract rule of law is not error.* While an instruction stating a correct rule of law as a mere abstract proposition may be refused without error, yet it is not error to give it if it is not misleading.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

BENJAMIN S. CABLE, for appellant.

JAMES C. McSHANE, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This was an action on the case begun in the superior court of Cook county. The declaration consisted of one count, in which it was averred, in substance, that the plaintiff, April 18, 1902, was employed by the defendant as a laborer to work with a certain gang engaged in loading iron rails on a flat-car at Blue Island; that the defendant had a foreman in charge of plaintiff and said other laborers engaged as aforesaid, whose orders it was their duty to obey, and who was not plaintiff's fellow-servant but was a vice-principal of the defendant; that plaintiff and his co-laborers, by the direction of said foreman, placed two long iron rails with one end of each on the flat-car and the other ends thereof on the ground, said rails to be used as skids in skidding rails from the ground onto the car and loading the car; that after said rails to be so used were placed, said foreman negligently so placed a stake in the side and at one end of

said car so high that it would strike and tip the rails while being skidded from the ground onto the car, thereby rendering the work extraordinarily dangerous; that while said stake was so placed said foreman negligently ordered plaintiff and his co-laborers to skid said rails onto the car, and while, in obedience to said order, they were skidding a rail from the ground onto the car, and while plaintiff was exercising ordinary care for his safety, one end of the said rail came in contact with the stake, and the rail was turned over, slid down the skid, and caught and crushed so severely the plaintiff's ankles that they have become and are permanently crippled and their usefulness is permanently impaired, etc. The appellant company filed a plea of not guilty. Upon a hearing the jury found the issues for the appellee. A motion for new trial was overruled and judgment in the sum of $12,500 was entered on the verdict. An appeal was prosecuted to the Appellate Court for the First District, where the judgment was affirmed, and the record is before us by a further appeal prosecuted by the appellant.

At the close of all the evidence the appellant company filed a motion for a peremptory instruction to take the case from the jury, which was overruled, and it is here urged the court erred in such ruling. It is insisted by the appellant company that if the appellee "was injured by the act of some other person or by the negligence of any one than himself, this other person was either O'Rourke or some other member of the gang, and in either event a fellow-servant."

The injury occurred on the 18th day of April, 1902. The appellee, at the time of the injury, had only been in the employ of the appellant company for nine days. The evidence shows that on the first eight days of his employment he was engaged in other work. On the day of the injury appellee was directed to help in loading rails upon a flat-car, and he had never been engaged in such work before that time. The car onto which the rails were being loaded stood north and south. The rails were old ones which had been taken up

from the track and weighed from nine to eleven pounds per foot, some of them being thirty feet long and others shorter, and they were piled on the ground a short distance west of the car and were loaded onto the car from its west side. There were two long, perpendicular stakes driven into holes or pockets on the east side of the car to keep the rails in when loaded onto it from the west side, and there were two men on the car to receive and pile the rails when they came onto the car. Two greased rails were placed about seven feet apart about the middle part of the west side of the car, their upper ends resting on the side of the car, or on rails at that side, and their lower ends on the ground a short distance from the pile of rails to be loaded. These rails were used as skids on which to shove the rails onto the car. The farther or east side of the car was first loaded to the required height, the loading gradually approaching the west side of the car, and when the loading reached to within a short distance from the west side of the car it became necessary to drive two short stakes into the pockets on the west side of the car to prevent the rail or rails then placed under the upper ends of the skids from being crowded off the car by the rails already loaded. The flat part of the rail, when being shoved up, was next to the skids. The rails were shoved up by the men by means of round sticks about one and three-quarters inches in diameter, with a block end. There was danger that if a rail being shoved up should come in contact with anything and turn over, the men shoving it would lose their hold on it by their sticks being thrown out of place and it would slide down the skids. The man alleged to have been in charge of the gang of workmen was Peter O'Rourke, and the evidence not only tends to show, but does show, that O'Rourke was directing the men in the work and gave orders as to the means to be adopted in performing the same. The two stakes above referred to were put in by O'Rourke. The evidence clearly shows that the stake at the south end of the car was higher than the skids upon which the rails

were being raised and put on the car. The proof shows that the attention of O'Rourke was called to the fact that the stake extended above the skids, and when his attention was so called he made no effort to drive the stake farther into the slot on the side of the car or to chop or saw off the stake, but called to the gang on the ground to proceed with the work of pushing the rails up. The men obeyed the direction, and the evidence tends to show that when the rail reached the top of the skids it caught or hit on the stake, causing the rail to turn, whereby the gang pushing the rail lost control of it, and it slid back down the skids and caught the appellee and injured him.

The evidence, we think, tends strongly to show that O'Rourke was the foreman in charge of the gang, and the giving of the order to push the rails up caused the injury to appellee, and that he gave the order to the men to push up the rail when he knew the stake was too high. The witnesses, when speaking of O'Rourke, called him the foreman or "boss." The evidence of O'Rourke himself shows that he was directing the men, for he testified that he kept telling the men "to be careful." It was shown O'Rourke's attention was called to the fact that the stake was too high, and that instead of attempting to lower it he directed the men to proceed to load the rail. O'Rourke testified he knew the stake was too high, but that he had no ax or saw with which to reduce its height and that he used the shortest stake he had there. It was not necessary for appellee to show, in order to prove O'Rourke was a vice-principal, that O'Rourke had the power and authority to employ and discharge the men under him. "The mere fact that he [the foreman] had no power to employ or discharge men does not necessarily render him other than a vice-principal. The question was one of fact for the jury." (*Fraser & Chalmers* v. *Schroeder,* 163 Ill. 459.) The question whether or not O'Rourke was a vice-principal was a question of fact to be determined by the jury, and there being evidence fairly tending to support the position of

the appellee that he was acting as a vice-principal in directing the men and controlling the manner of performing the work in which they were engaged, the court properly refused to give the peremptory instruction.

It is insisted that the danger arising from the stake being too high was as open and plain to appellee as to O'Rourke, and that appellee must have known that the stake being too high, a rail would turn or be thrown over when shoved up against the stake, and was therefore dangerous. We cannot assent to this. The appellee was working on the ground with a gang of men and had only worked there that one day. O'Rourke had been in the employ of the appellant company for twenty years. He was at the time of the injury to appellee on the top of the car, near the stake which he knew to be too high. His attention had been called by another man on top of the car to the condition of the stake, but he ordered the men to proceed with the work of pushing up the rail. The attention of the men pushing the rail must have been attracted to their own part of the work, and they were merely obeying the order of the foreman at that time. As the appellee was acting under the direction of the foreman he was not required by law to disobey him, or by obeying assume the hazard of obedience, unless the danger to which he was exposed was so imminent that a man of ordinary prudence would not have incurred the risk. (*Offutt* v. *World's Columbian Exposition*, 175 Ill. 472; *Graver Tank Works* v. *O'Donnell*, 191 id. 236.) The trial judge very properly allowed this question to go to the jury for determination.

It is insisted the court erred in failing to sustain an objection to the question asked of appellee's witness Mislich, as follows: "During the time you worked there did you ever know of a stake being high enough to strike the rail before?" To which the witness answered "no." It is urged such evidence was in no way material or proper; that the question was as to what was done on the day of the injury. The objection offered to this question was general. We

have held that it is only when the evidence is inadmissible for any purpose that a general objection will suffice. (*Illinois Central Railroad Co.* v. *Wade,* 206 Ill. 523.) In such state of the record we do not think it can be urged the court erred in admitting such evidence. It has often been held by us that proof of the usual manner of conducting a business is proper evidence in suits of this character as shedding light upon the acts and conduct of the parties. *St. Louis Nat. Stock Yards* v. *Godfrey,* 198 Ill. 288.

Counsel for appellant urges at great length that error was committed by the court in giving the only instruction asked on behalf of appellee, which is as follows:

"The court instructs the jury that where a master confers authority upon one of his employees to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employee, in governing and directing the movements of the men under his charge, with respect to that branch of the business is the direct representative of the master and is not a mere fellow-servant, and all of the commands given by him within the scope of his authority are, in law, the commands of the master, and if he is guilty of a negligent and unskillful exercise of his power and authority over the men under his charge, it is, in law, the same as though the master itself was guilty of such conduct."

The objection to the instruction, as stated by counsel, is, "that if the appellee was injured by the act of some other person or by the negligence of any other than himself, this other person was either O'Rourke or some other member of the gang, and in either case a fellow-servant; that this theory of the defense was entirely ignored in the one instruction offered by the appellee, which seems to assume or to take it for granted, first, that O'Rourke was a vice-principal; and second, that it was the exercise of his power as such vice-principal in giving an order to the gang that caused the accident." The rule of law embraced in this instruction was

deduced from a careful examination of the authorities and announced with his usual clearness and force by Justice Mulkey in *Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288. The authority and reason of the *May case* have never been questioned in this State so far as we are aware, but, on the contrary, the case has been often cited, approved and followed. (*Consolidated Coal Co.* v. *Wombacher,* 134 Ill. 57; *Wenona Coal Co.* v. *Holmquist,* 152 id. 581; *Fraser & Chalmers* v. *Schroeder,* supra.) This instruction, as drawn, is a mere abstract proposition of law and might for that reason have been refused without error. The doctrine of this court is that instructions should be based on the evidence before the jury. (*Coughlin* v. *People,* 18 Ill. 266; *Belk* v. *People,* 125 id. 584; *Healy* v. *People,* 163 id. 372.) The giving of such an instruction, if it contains an accurate statement of the law and is not misleading, is not error. *Beidler* v. *King,* 209 Ill. 302.

The case of *Baier* v. *Selke,* 211 Ill. 512, is relied on by appellant in support of its objection to this instruction. In that case the foreman, Weber, ordered the employee to get into a rice tub and clean it. Afterwards, and while this order was being executed, Weber threw in a clutch and started the machinery going, which rendered Selke's position perilous and resulted in his being injured. The fifth instruction in the *Selke case* directed the jury to find the defendant guilty if they believed the plaintiff was injured, as charged in his declaration and while exercising reasonable care for his own safety, through the negligence of the foreman. The instruction was held erroneous because it did not distinguish between the act of the foreman in giving the order to Selke to go into the rice tub and clean it,—an act which he did in his capacity as vice-principal and for which the master was liable,—and the act of Weber in throwing in a clutch,—an act which he did, not as foreman, but as a co-laborer and fellow-servant, and for any negligence in respect to which the master would not be responsible. The case is

not in conflict with the *May case, supra,* and others in the line of cases based on the *May case.* On the contrary, the *May case* is cited and approved in the *Selke case* on the point that a person may be a vice-principal as to one thing and a fellow-servant as to another, depending on the nature and character of the particular act. In the case at bar it is sought to apply this rule to the two acts of O'Rourke,—placing the stake in the socket, as to which it is said he was a fellow-servant, and the order to shove the rails up, as to which he is clearly a vice-principal. A careful reading of the instruction under consideration will show that it could not possibly have been applied by the jury to any act of O'Rourke except the order to appellee and his fellow-workmen to shove up the rails. It is unlike the instruction condemned by the court in *Baier* v. *Selke, supra.* While, by his declaration, appellee has charged that O'Rourke negligently placed the stake in the side of the car so high that the rails would not pass over it and that he negligently gave the order to skid the rails onto the car, still it is not essential to the right of recovery that both of these acts should be shown to be actionable negligence in appellant. If O'Rourke placed the stake in position he had notice of its location, its extension above the rails, and must have known of the danger attending the execution of his order. The case would not be any different if any of the other employees had placed the stake if O'Rourke had notice of it. The stake is a mere fact, the existence of which tended to prove the negligence in giving the order. The instruction complained of is an accurate expression of the rule of law, and we are unable to see how it could possibly have misled the jury, and there was therefore no error in giving it.

There being no error in this record the judgment of the Appellate Court is affirmed.                *Judgment affirmed.*