# BARLOW v. SALT LAKE & U. R. CO.

## No. 3487.   Decided December 24, 1920.   (194 Pac. 665.)

1. TRIAL—MOTION FOR NONSUIT SHOULD BE SPECIFIC. A motion for a nonsuit should be specific, and a motion stating that the evidence fails to show negligence or carelessness is too general to be considered.[1]

2. APPEAL AND ERROR—MOTION FOR NONSUIT TREATED AS SUFFICIENT WHEN SO TREATED BY PARTIES. Where both parties treated a motion for nonsuit as sufficient, the Supreme Court will treat it as sufficiently specific.

3. TRIAL—TESTIMONY VIEWED FAVORABLY TO PLAINTIFF ON MOTION FOR NONSUIT. For the purposes of a motion for a nonsuit, the testimony must be viewed in the light most favorable to plaintiff.

4. CARRIERS—PERMITTING LOOSE GRAVEL ON PLATFORM HELD TO MAKE QUESTION FOR JURY AS TO NEGLIGENCE. In an action against a railroad company for injuries to a passenger caused by gravel on the platform slipping under her foot, evidence that loose gravel had been placed on the platform next to the track shortly before the accident made a question for the jury as to the company's negligence whether or not the platform itself without such gravel was reasonably safe.

5. CARRIERS—CONTRIBUTORY NEGLIGENCE OF ALIGHTING PASSENGER HELD QUESTION FOR JURY. Whether a passenger who was injured when gravel on a platform slipped under her foot as she was alighting was negligent was a question of fact for the jury, though she had bundles in her arms, stepped down without asking for help, and did not take hold of the railing, where she testified that, because of her dress, she could not see the loose gravel on the platform.[2]

6. CARRIERS—ALIGHTING PASSENGER NOT REQUIRED TO SEARCH FOR OBSTACLES. Unless a railroad platform was obviously dangerous, an alighting passenger had a right to assume it to be

---

[1] Lewis v. Silver King Min. Co., 22 Utah, 51, 61 Pac. 860; White v. R. G. W. Ry. Co., 22 Utah, 138, 61 Pac. 568; Wild v. U. P. Co., 23 Utah, 265, 63 Pac. 886; Boyd v. L. A. & S. L. Ry. Co., 45 Utah, 449, 146 Pac. 282.

[2] Davis v. Rio Grande Ry. Co., 45 Utah, 1, 142 Pac. 705.

safe, and was under no obligation to search for loose gravel
or articles on which she might step and fall.

7.   CARRIERS—CONFLICTING EVIDENCE AS TO CONDITION OF PLAT-
     FORM DOES NOT JUSTIFY DIRECTED VERDICT. In an action for
     injuries sustained by an alighting passenger, evidence for
     defendant that no loose gravel had been deposited on the
     platform as claimed did not justify a directed verdict when
     in conflict with the testimony for plaintiff.

8.   CARRIERS—EVIDENCE OF PRIOR USE OF STOOL FOR ALIGHTING PAS-
     SENGERS HELD ADMISSIBLE FOR LIMITED PURPOSE. In an action
     for injuries to an alighting passenger, evidence of the use
     of a footstool on prior occasions *held* admissible, when limited
     to its bearing on whether defendant in exercise of ordinary
     care was under the duty of providing such stool.

9.   EVIDENCE—OPINION AS TO WHETHER IT WAS SAFER FOR PAS-
     SENGER TO ALIGHT WITH OR WITHOUT FOOTSTOOL HELD INAD-
     MISSIBLE. In an action for injuries to an alighting passenger,
     testimony of a railroad conductor as to whether it was safer
     to discharge passengers by having them step a distance of 17
     inches or step upon a footstool, and whether in the use of a
     footstool there was danger of the stool tipping and throwing
     the passenger down, was properly excluded, as these questions
     were peculiarly within the province of the jury to decide.[3]

10.  CARRIERS—SIMILAR ACCIDENT NOT ADMISSIBLE TO SHOW NOTICE.
     In an action for injuries to an alighting passenger whose
     evidence showed the deposit of loose gravel on the platform,
     evidence that another passenger nearly fell, or that the gravel
     was loose and slid from under her foot, was not admissible
     to show notice, as it was the duty of the carrier to know the
     condition of the platform and it was not entitled to notice.

11.  CARRIERS—SIMILAR ACCIDENT HELD ADMISSIBLE TO DESCRIBE AND
     CHARACTERIZE CONDITION OF PLATFORM. In an action for in-
     juries to an alighting passenger caused by loose gravel slip-
     ping under her foot, the testimony of another passenger that
     on the same occasion the gravel slid from under her foot, and
     she almost fell, was admissible to describe and characterize
     the condition of that part of the platform where plaintiff fell
     at the time.[4]

12.  CARRIERS—ABSENCE OF SIMILAR ACCIDENTS SUBSEQUENT TO IN-

---

[3] *Sweet* v. *Salt Lake City*, 43 Utah, 307, 134 Pac. 1167.

[4] *Shugren* v. *Salt Lake City*, 48 Utah, 320, 159 Pac. 530.

JURY NOT ADMISSIBLE. In an action for injuries sustained by an alighting passenger when loose gravel slipped under her foot, evidence that during the 16 months following the injury over 50,000 passengers alighted at such platform without injury was properly excluded, as, aside from the dissimilarity of conditions, it would have had no tendency to prove that there was no loose gravel that slipped under plaintiff's foot, resulting in a fall and injury.[5]

13. CARRIERS—INSTRUCTION DESCRIBING ACT AS CARELESSLY AND NEGLIGENTLY DONE NOT MISLEADING. An instruction that if defendant stopped its car for the purpose of permitting passengers to alight, and if it had "carelessly and negligently permitted loose gravel and earth to be placed and remain below the steps of the car," etc., was not misleading, as describing the permitting the loose gravel and earth to remain on the platform as negligence and carelessness.

14. TRIAL—INSTRUCTIONS TO BE CONSIDERED TOGETHER. The instructions must be considered and interpreted together, and the singling out of a particular instruction or a particular sentence or phrase from its context for the purpose of giving it a meaning that cannot be gathered from the instructions when considered as a whole is not allowable.

15. CARRIERS—SURROUNDING CIRCUMSTANCES PROPERLY CONSIDERED IN DETERMINING WHETHER REASONABLY SAFE PLACE TO ALIGHT WAS FURNISHED. In an action for inquries to an alighting passenger, where the evidence regarding plaintiff's age and weight and the bundles she was carrying and the height of the step from the ground was without conflict, it was proper for ·the jury to consider such matters and all circumstances and conditions as they found them to be at the time and place of the accident, in determining whether defendant furnished a reasonably safe place to alight.

16. TRIAL—INSTRUCTION TO CONSIDER PASSENGER'S AGE AND CONDITION IN DETERMINING SAFE PLACE FOR ALIGHTING HELD NOT ON WEIGHT OF THE EVIDENCE. In a passenger's action for injuries, an instruction that in determining whether defendant furnished plaintiff a reasonably safe place to alight the jury should consider plaintiff's age and condition, what bundles she was carrying, if any, the distance of the lower step from the ground, and the condition of the ground at the place of alighting, was not objectionable as a charge on the weight of the evidence.

---

[5] Distinguishing, Hurd v. Union·Pac. Ry. Co., 8 Utah, 241, 30 Pac. 982; Shugren v. Salt Lake City, 48 Utah, 320, 159 Pac. 530.

17. CARRIERS—INSTRUCTIONS NOT ERRONEOUS AS SUBMITTING MAT-
TERS NOT IN DISPUTE. In a passenger's action for injuries, an
instruction that she had a right to assume, in alighting, un-
less she was notified or observed, or by ordinary care would
have observed the contrary, that defendant had exercised
reasonable care, etc., was not erroneous as submitting to the
jury uncontradicted matters as to what plaintiff observed,
where, though she testified to all of the conditions, she also
testified that before alighting her dress prevented her from
seeing the platform.

18. APPEAL AND ERROR—CARRIERS—INSTRUCTIONS OMITTING QUALI-
FYING WORDS HELD NOT MISLEADING OR GROUND FOR REVERSAL.
In a passenger's action for injuries, an instruction requiring
defendant to exercise the reasonable diligence, care, skill, etc.,
that a careful, prudent man would exercise was not mislead-
ing or ground for reversal, even assuming that the words
"careful, prudent man" should have been qualified by the
word "ordinarily" or "reasonably."

19. CARRIERS—DUTY AS TO KEEPING PLATFORMS AND APPROACHES
SAFE STATED. Railroad companies are bound to keep in a safe
condition all portions of their platforms and approaches
thereto, to which the public do or naturally would resort.

20. DAMAGES—INSTRUCTION INCLUDING ELEMENT OF WHICH THERE
WAS NO EVIDENCE HELD NOT MISLEADING. In an action for in-
juries, an instruction to allow plaintiff all reasonable and
necessary expenses paid or incurred for nursing and medical
expenses, etc., was not misleading, though there was no evi-
dence of anything paid for nursing, and though technically
the court erred in referring to such matter, as the jury knew
what the evidence was and knew that nothing had been paid
for nursing.[6]

21. DAMAGES—EVIDENCE OF PAYMENT PRIMA FACIE EVIDENCE OF
REASONABLENESS OF PHYSICIAN'S CHARGES. Evidence that serv-
ices of physicians were necessary for the treatment of an in-
jured person, and that their bills had been paid, made a prima
facie case that their charges were reasonable.

22. DAMAGES—EVIDENCE OF AMOUNT PAID SOME EVIDENCE OF REA-
SONABLENESS OF AUTOMOBILE HIRE. The amount paid for hire of
an automobile to carry an injured person to her home was some
evidence of reasonable value, and absence of direct evidence

[6] *Bergstrom* v. *Mellen*, 57 Utah, 42, 192 Pac. 679.

as to the reasonableness of the charge of $8 did not require a reversal of a judgment for $2,999.

23. TRIAL—COUNSEL'S REFERENCE TO ELEMENT OF DAMAGES EX-CLUDED BY COURT HELD CURED BY INSTRUCTION AND REPRIMAND. Though in an action for injuries of such a nature as to neces-sarily prevent plaintiff from following her usual vocation for some time counsel should have accepted the court's ruling that impairment of plaintiff's means of earning a livelihood was not in issue because not pleaded, the act of counsel in again referring to such element of damage was not such flagrant misconduct as called for anything more than an in-struction to the jury not to consider such element of damage and a reprimand to counsel.[7]

Appeal from District Court, Third District, Salt Lake County; *Wm. H. Bramel,* Judge.

Action by Clarissa P. Barlow against the Salt Lake & Utah Railroad Company. From a judgment for plaintiff, defend-ant appeals.

AFFIRMED.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for appellant.

*H. A. Smith & Son,* of Salt Lake City, for respondent.

WEBER, J.

Plaintiff brought suit to recover damages due to the alleged negligence of defendant, and obtained a verdict in her favor. From the judgment on the verdict defendant appeals.

The plaintiff alleges and the answer admits that defendant is a corporation operating a line of railroad as a common carrier between Salt Lake City and Magna, Utah; that on May 14, 1918, plaintiff was a passenger from Salt Lake

[7] *Andrews* v. *Free,* 45 Utah, 505, 146 Pac. 555, Ann. Cas. 1918A, 475; *Atwood* v. *Railway Co.,* 44 Utah, 366, 140 Pac. 137; *Wooten* v. *Dragon Min. Co.,* 54 Utah 459, 181 Pac. 593.

City to Magna; that Magna is a city of about 5,000 inhabitants; that on said day plaintiff, while alighting from one of defendant's cars at Magna, turned her ankle in stepping upon the platform provided by the railroad company, and sustained injuries.

The acts and omissions constituting negligence charged in the complaint and denied in the answer are: (a) That the means and method provided by defendant at the time and place for passengers to alight from said street cars, and particularly for plaintiff, were wholly insufficient and dangerous for that purpose, and defendant was guilty of gross and inexcusable negligence and carelessness in failing to provide a reasonably safe place and manner in which plaintiff could alight; (b) that the step from which plaintiff alighted was about 17 inches from the surface of the ground; (c) that defendant failed to maintain a platform of any character upon which plaintiff could, with reasonable safety, alight; (d) that defendant failed to furnish a stool or other means to enable plaintiff to alight from the step of the car; (e) that defendant constructed and maintained a landing below the step of the car, which consisted of coarse and loose gravel, the surface of which was soft, loose, irregular, uneven, and sloping; (f) that defendant, knowing that it was dangerous to plaintiff to alight, failed to render plaintiff any assistance by its conductor or other person; (g) that defendant failed to advise plaintiff of the dangerous condition of the landing and of the lack of proper means for her to alight, so that she might exercise greater care for her own safety. It is further alleged that when plaintiff alighted the gravel slipped from under her foot, causing her to fall to the ground, breaking her right ankle; that as a result she was confined to her bed two months, suffered mental and physical pain, and was permanently injured.

In addition to the admissions and denials above stated, the answer alleged that whatever injuries, if any, were received by plaintiff in alighting from defendant's train at said time and place were due entirely to the carelessness and negligence

of plaintiff in the manner in which she stepped from the train.

Mrs. Clarissa P. Barlow, plaintiff below and respondent here, testified in effect: On May 14, 1918, she was 57 years of age, and weighed 167 pounds. At that time she was a passenger on appellant's train from Salt Lake City to Magna, Utah, alighting at Magna, a town of about 5,000 population. At the time she alighted from the car she was carrying two cartons tied together, also her handbag or satchel and a bundle of personal property, carrying part of these articles in her hands and part under her arms. The car stopped at the usual place at the end of the line at Magna. When the car stopped she attempted to alight in the ordinary way. Other passengers were also alighting, some in front of her and some behind her. It was broad daylight, about 7 o'clock in the evening. She looked where she was going, and there was nothing to divert her attention. She could not see where her feet would be placed when she got down with her bundles. Her skirt would have prevented it. She did not take hold of the handrail as she ordinarily did. If she had not had her bundles, or if, having them, she had laid them aside while detraining, or had asked the conductor to help her hold them, and had then taken hold of the handrail and let herself down, she thought the accident would not have happened. She said further:

"I did not rely on the conductor to assist me. I felt confident, I guess, to get out alone. I did not rely upon him to take hold of me and let me down. I did not anticipate any danger or I wouldn't have got out. I went down too quickly for any one to help me. On the day of the accident the platform looked as it had looked on any other day on my numerous visits to Magna. The only difference was that there was not the footstool that had usually been there. I did not slip on the gravel. I stepped down, and the gravel slipped under my foot, and the ankle turned. I usually went to Magna about twice a month, and before this time a stool had been placed just below the step to assist in alighting from the train. After I was hurt I sat on a stool such as is used by railroad companies, and observed the character of the material upon which I stepped as I got down from the step of the car. I saw the loose gravel. It was a mixture of both kinds of gravel,

both coarse and fine. Some was fine, and some was coarse. Some was as large as a chicken's egg and some smaller. I saw where my foot had been in the gravel. The station platform was not covered all in the same way. If you stepped out a little farther it was level to the walk ahead. I think the gravel was along close to the rail. A step farther away the gravel was packed, where it was walked on more."

The witness further testified that her ankle was kept in splints eight days, then put in a cast, where it remained for three or four weeks. She said she used crutches for three months, and after discarding them used a cane, and for from three to six weeks after she had discarded the crutches she could not trust herself to walk any considerable distance; that she is now doing her regular household duties. The swelling in the ankle was going down continuously. There is still some enlargement of the ankle.

Mrs. Frances E. Jones, who preceded Mrs. Barlow in alighting from the car at the time of the accident, first saw respondent as she was on the ground. Mrs. Jones testified that when she herself stepped down she stepped on gravel, which was in a loose condition, and slipped from under her foot. The ground underneath the car step was not level. It was inclined. Prior to this she had never noticed any loose gravel underneath the car steps.

Carolus V. Cammons testified that the gravel had been put there two or three days before the accident. He saw Mrs. Barlow when she had fallen. There was loose gravel, some large and some small pieces of gravel. It was not level. It was perfectly loose, and had not been tramped down.

Mrs. Frontjes, a daughter of plaintiff, testified that she waited upon and nursed her mother from the day of the accident until seven or eight weeks thereafter.

A physician testified to the nature of Mrs. Barlow's injuries and stated that in his opinion, on account of her age and the length of time which had elapsed, whatever disability she had at the time of trial would be more or less permanent.

Another physician testified that in his opinion plaintiff would always suffer more or less pain, and will always have a weak ankle.

When respondent rested appellant moved for a nonsuit on the following grounds:

"(1) The evidence fails to establish that the defendant was guilty of negligence with respect to any of the matters alleged and complained of by the plaintiff in her complaint herein. (2) The evidence fails to establish that any negligence on the part of the defendant was the proximate cause of the accident and injury by plaintiff complained of. (3) The evidence affirmatively, as matter of law, establishes that the plaintiff was guilty of negligence which directly and proximately contributed to the accident by her complained of."

Counsel made specifications and went fully into the details of the evidence, which they claimed established contributory negligence as a matter of law.

It has been repeatedly held by this court that a motion for nonsuit should be specific, and that a motion, stating that the evidence fails to show negligence or careless-   1, 2 ness, is too general to be considered. *Lewis* v. *Silver King Min. Co.*, 22 Utah, 51, 61 Pac. 860; *White* v. *R. G. W. Ry. Co.*, 22 Utah, 138, 61 Pac. 568; *Wild* v. *U. P. Co.*, 23 Utah, 265, 63 Pac. 886; *Boyd* v. *L. A. & S. L. Ry. Co.*, 45 Utah, 449, 146 Pac. 282. However, both parties having treated the motion for nonsuit as sufficient, we shall therefore treat the motion as though it were sufficiently specific.

In their brief counsel for appellant say:

"The case should have been withdrawn from the jury for two reasons: (1) The uncontradicted evidence was such that reasonable minds could not infer that the defendant had failed to use ordinary care under the circumstances; (2) if it be assumed, as contended by the plaintiff and as held by the trial court, that the inference of negligence could properly be drawn, nevertheless the uncontradicted facts were such that the reasonable mind must infer that the plaintiff's acts were negligence, and that such negligence proximately contributed to the accident."

The testimony introduced by plaintiff showed: First, loose gravel underneath the step at that part of the platform on which Mrs. Barlow stepped; second, that the distance from the lower step of the car to the platform was 17 inches; third, that she had not been given any warning of the condition of the platform; fourth, that no assistance was offered or given

her by the conductor when she alighted from the car; fifth, that no stool had been provided for her to step upon in alighting from the car. For the purposes of the motion for nonsuit the testimony must be viewed in the light most favorable to respondent. It is conceded that with respect to appellant's platform and to passengers alighting thereon from its trains the duties of appellant are the same that they would have been if the company had been operating an ordinary steam railroad. The duty of defendant railroad company regarding its platform was announced by the court in an instruction, to which neither party excepted, to be "to use reasonable care and caution to provide reasonably safe and suitable means at its station at Magna for passengers alighting from its cars." Not only was the platform itself made of gravel, but, according to the evidence adduced by plaintiff, which the jury had a right to believe, loose gravel had been placed on the platform next to the track a short time before the accident. If the jurors gave credence to that testimony they could with good reason infer that the railroad company was negligent in permitting loose gravel on the platform, and that regardless of whether the platform itself, without the loose gravel, was reasonably safe. Any jury would have been justified in finding that ordinary prudence required greater care than was exercised by appellant in depositing loose gravel upon the platform. It is also difficult to escape the conclusion that the loose gravel was one of the alleged acts of negligence which proximately contributed to the injuries sustained by respondent.

One cannot say that the evidence of contributory negligence is free from doubt, and that reasonable men must arrive at the conclusion that the plaintiff was guilty of contributory negligence. Respondent had bundles in her arms when alighting from the car. She stepped down without asking for help. She did not take hold of the railing. These facts would not necessarily constitute negligence on her part. Because of her dress, as she claims, she did not see the loose gravel on the platform. It was not her

duty to search for loose gravel or other obstacles or articles upon which she might step and fall. Unless the platform was obviously dangerous, she had a right to assume it to be safe. Under such conditions and circumstances contributory negligence is a question of fact for the jury. *Davis* v. *Rio Grande Ry. Co.*, 45 Utah, 1, 142 Pac. 705.

The motion for nonsuit was properly denied.

After introduction by appellant of its evidence a motion was made for a directed verdict in its favor. The appellant had produced witnesses whose testimony was in direct conflict with that adduced by respondent, Barlow, as to the claim that loose gravel had been deposited on the platform within a few days before the accident, and that loose gravel was on the platform at the time of the accident. As a directed verdict cannot be justified when the evidence is conflicting, this motion was also properly denied.

It is contended by appellant that prejudicial error was committed by the court in admitting testimony showing that on occasions previous to the accident a footstool had been furnished by defendant to assist passengers to descend from cars and in refusing to permit defendant to show why the use of such footstool had been discontinued. The evidence relating to the stool was restricted by the court, who, at appellant's request, gave the following instruction:

"Certain evidence has been introduced in this case which tends to prove that during some period prior to the happening of this accident, and on other prior occasions when plaintiff paid visits to Magna, a stool was provided by the defendant for use of its passengers in alighting from its cars. I charge you that such former custom or practice is of no materiality whatever in this case except as it may bear upon the question whether or not the defendant in the exercise of ordinary care for the safety of its passengers was under the duty of providing such stool, and the fact that no stool was provided on the occasion of the accident does not establish negligence on the part of the defendant, unless you further find by a preponderance of the evidence that a reasonably prudent person, engaged in the same business and operating similar cars to those operated by defendant and under the same surrounding facts and circumstances, would in the exercise of ordinary care have provided such stool for the use of passengers."

The evidence complained of was properly admitted **8** for the purposes specified in the foregoing instruction.

One of appellant's conductors was produced as a witness, and was requested by counsel for the railroad company to give his opinion as to whether it was safer to discharge passengers by having them step down a distance of 17 inches or to have them step upon a stool which intercepted the distance of 17 inches in part, and also whether or not in the use of a stool there is danger in passengers stepping on it and tipping the stool over, and in that way throwing the passenger to the ground. The rulings of the court sustaining the objections to those questions were clearly proper. Whether a stool should have been provided under the circumstances was a question for the determination of the jury. The **9** witness was asked to pass upon issues of fact that were peculiarly within the province of the jury for decision. If admitted, such testimony would have been tantamount to requiring the jury to refrain from passing upon those issues and to accept the opinion of a witness on what was not a subject of expert testimony. *Sweet* v. *Salt Lake City,* 43 Utah, 307, 134 Pac. 1167.

It is earnestly insisted by counsel for appellant that the court committed prejudicial error in permitting plaintiff to show, over objection by defendant, that another woman at approximately the same time and place almost met with an accident, and particularly in refusing thereafter to permit the defendant to show that for many months before and after the accident in question the conditions were substantially identical at the station in question, and that many thousands of passengers had detrained at the same place under substantially identical conditions, and that there had been no other accident. The witness referred to by counsel was Mrs. Jones, who testified that when she stepped on the gravel the next step brought her to an incline, and she nearly fell. The evidence as to almost falling, or almost having an accident, was, on motion of appellant's counsel, stricken by the court. Later in her testimony Mrs. Jones said that the gravel was loose and slid from under her foot.

It is claimed by respondent that this testimony was competent on the question of notice. Appellant was not entitled to notice of the condition of the platform. If it deposited gravel on the platform, as testified to by respondent's witnesses, and if such condition constituted negligence, it was of no importance whether it had or had not notice of the condition created by its alleged negligence. It was the duty of the company to know the condition of the platform at all times, and to maintain it in a condition of reasonable safety. While not admissible for the purpose of showing notice, the testimony of Mrs. Jones was admissible to describe and characterize the condition of that part of the platform where and at the time when respondent fell and broke her ankle. *Shugren* v. *Salt Lake City*, 48 Utah, 320, 159 Pac. 530. According to the rule announced in that case, in which it was held that evidence that other people had previously stumbled, though not fallen, over the projection in the sidewalk on which the injured plaintiff had tripped and fallen, was admissible both as notice to the city and as characterizing the defect, the appellant was not entitled to the ruling that was made in its favor striking out the evidence that Mrs. Jones nearly fell or nearly had an accident. After the court had once sustained appellant's objection to the testimony now complained of, the testimony was again elicited from the witness on cross-examination by counsel for defendant, and it was the repetition brought out by appellant itself which remained in the record.

Appellant's contention that it was not permitted to introduce proof showing that for many months before the accident the conditions were substantially identical at the station is not in accord with the evidence in the record. Without objection, the local agent· of the company testified that since March 8, 1918, when he assumed his position at Magna, to the day he testified he had seen the condition of the platform every day; that its condition had been that of a level platform with a surface of pea gravel, and that there were no changes made in it since March 18th up to the time he testified. This witness also testified that no passenger was

injured in alighting from the interurban cars at Magna from the time he went to work there until May 13, 1918, nor was any passenger alighting from said cars, save Mrs. Barlow, the respondent, injured on May 14, 1918. Another witness testified on behalf of appellant that in May, 1918, the platform at Magna was packed down pretty hard; that there was no gravel at the surface where passengers alighted; that he had never seen an accident to a passenger alighting from the train at Magna prior to May 14, 1918. Another witness testified that the platform was smooth and even during May, 1918. This testimony disposes of any questions as to testimony with reference to accidents to others, and the absence of accidents before May 14, 1918. It is of no importance at this time whether that testimony was properly admitted or not. It was introduced by appellant and admitted without objection. Counsel's objection, however, applies to the court's refusal to admit testimony as to other passengers alighting without accident at Magna after May 14, 1918, the date of the accident in question here. It was shown that 50,629 tickets were sold between May 14, 1918, and September 14, 1919, from Salt Lake City to Magna. Appellant offered to prove that none of the passengers using these tickets were injured when alighting at Magna. The proffered negative testimony that no passenger was injured when alighting from the cars at Magna after May 14, 1918, was not admitted, which ruling of the trial court is claimed to be erroneous. In support of the contention counsel for appellant cite these cases: *Hurd* v. *Union Pac. Ry. Co.*, 8 Utah, 241, 30 Pac. 982; *District of Columbia* v. *Arms*, 107 U. S. 519, 2 Sup. Ct. 840, 27 L. Ed. 618; *Crafter* v. *Metropolitan Ry. Co.*, L. R. 1 Com. Pleas, 300; *Lafflin* v. *Buffalo & S. W. R. Co.*, 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; *Calkins* v. *Hartford*, 33 Conn. 57, 87 Am. Dec. 194; *Wilson* v. *Granby*, 47 Conn. 75, 36 Am. Rep. 51; *Ill. Cent. Ry. Co.* v. *Treat*, 179 Ill. 576, 54 N. E. 290; *Phelps* v. *Winona, etc., Ry. Co.*, 37 Minn. 485, 35 N. W. 273, 5 Am. St. Rep. 867; *Doyle* v. *St. Paul, etc., Ry. Co.*, 42 Minn. 79, 43 N. W. 787; *Dougan* v. *Champlain Trans. Co.*, 56 N. Y. 1; *Baird* v. *Daly*, 68 N. Y. 547; *Elster* v. *Seattle,*

18 Wash. 304, 51 Pac. 394; *C., R. I. & P. R. Co.* v. *Rathneam,* 225 Ill. 278, 80 N. E. 119; *Wm. Laurie Co.* v. *McCullough,* 174 Ind. 477, 90 N. E. 1014, 92 N. E. 337; *Yates* v. *Covington,* 119 Ky. 228, 83 S. W. 592; *Fulton Iron & Engine Works* v. *Kimball,* 52 Mich. 146, 17 N. W. 733; *Field* v. *Davis,* 27 Kan. 400.

In *Hurd* v. *U. P. Ry. Co.,* 8 Utah, 241, 30 Pac. 982, plaintiff was injured while coaling an engine. On other occasions this engine had, without human agency, moved with the brake and lever properly set. One of the witnesses was asked if he had ever known an engine to move without assistance of some human agency. This was excluded by the trial court, and the ruling was approved by this court.

It is true, as counsel contend, that in *Hurd* v. *U. P. Ry. Co.,* *supra,* the doctrine of the Supreme Court of the United States in *District of Columbia* v. *Arms,* 107 U. S. 519, 2 Sup. Ct. 840, 27 L. Ed. 618, was impliedly approved. The latter was a case to recover damages for injuries from a fall caused by a defective sidewalk in the city of Washington, which had been left unguarded and in a dangerous condition. The court held that while it was in that condition it was proper to show that other like accidents had occurred at the same place, for the reason that it tended to show the dangerous character of the place, and that from the publicity necessarily given such accidents it tended to show that the city authorities had notice of the dangerous character of the defect. The doctrine of the Arms Case has been approved in *Shugren* v. *Salt Lake City, supra,* which is that for the purpose of describing or characterizing the place of the injury other like accidents may be shown. That, however, is far from holding that the absence of subsequent accidents may be shown, and that is the question here.

Some of the other cases cited by counsel for appellant support their position that proof of nonoccurrence of like accidents after the accident in question is relevant, but we are not inclined to follow those authorities. The weight of authority is to the effect that evidence of subsequent accidents is not admissible. Note 7 to *Alcott* v. *Public Service Cor-*

*poration,* 32 L. R. A. (N. S.) 1160; 34 Cyc. 614.

It follows as a logical conclusion that evidence of the        **12**
absence of subsequent accidents is inadmissible.    In
8 Ency. Ev., 931, it is said:

"In many jurisdictions, the fact of the non-occurrence of other
accidents at the point of the alleged defect cannot be shown in
evidence, for (as such courts hold) proof of such fact not only
would tend to raise collateral issues, but further would have no
tendency to disprove the dangerousness of the place."

As supporting the text, cases are cited from California,
Illinois, Indiana, Maine, Massachusetts, Missouri, Rhode
Island, and Vermont.

In other jurisdictions, it is said, in the paragraph above
quoted from, testimony that other persons—

"while traversing the point of the alleged defect, apparently in
the same manner as the person damnified, were not injured, is
received to show the absence of a dangerous defect at that point
(as such courts hold), and that the defect, if any there was, was
not the proximate cause of the accident."

As supporting this latter proposition, the cases cited are
from Alabama, Connecticut and Michigan.

Respondent refers to these cases:    *Branch* v. *Libbey,* 78
Me. 321, 5 Atl. 71, 57 Am. Rep. 810; *Schoonmaker* v. *Wil-
braham,* 110 Mass. 134; *Peverly* v. *Boston,* 136 Mass. 366, 49
Am. Rep. 37; *Denver Tramway Co.* v. *Reid,* 35 Pac. 273; *New-
comb* v. *N. Y. Cent. & H. R. R. Co.,* 182 Mo. 687, 81 S. W.
1076; *Bloor* v. *Delafield,* 69 Wis. 273, 34 N. W. 115; *Garske*
v. *Ridgeville,* 123 Wis. 503, 102 N. W. 22, 3 Ann. Cas. 747;
*Temperance Hall Ass'n* v. *Giles,* 33 N. J. Law, 264; *Bauer* v.
*City of Indianapolis,* 99 Ind. 56; *Delphi* v. *Lowery,* 74 Ind.
520, 39 Am. Dec. 98; *Ward* v. *City of Troy,* 55 App. Div. 192,
66 N. Y. Supp. 925; *Anderson* v. *Taft,* 20 R. I. 362, 39 Atl.
191; *Merryman* v. *Chicago, G. W. Ry. Co.,* 135 Iowa, 591, 113
N. W. 357; *Wright* v. *Kansas City Terminal Co.,* 195 Mo.
pp. 480, 193 S. W. 963; *Kelley* v. *Parker Washington Co.,* 107
Mo. App. 490, 81 S. W. 631.

To review the cases cited by counsel for the parties here
would necessitate an unreasonable extension of this opinion.

If a person has sustained injury as the result of a fall

caused by a dangerous defect or obstruction in a city side-walk, to prove that a hundred others afterwards walked on the same dangerous place and escaped peril is not proof .that the defect or dangerous condition did not exist at the time of the accident. For many reasons others may avoid falling and escape injury. In the present case the proposed testi-mony that 50,000 other persons who alighted at Magna plat-form after Mrs. Barlow's accident were not injured has no evidentiary force whatever. In the nature of things, condi-tions could not remain the same. Fifty thousand people alighting on a gravel platform would affect the gravel. The loose gravel thereon would be tramped down and possibly made solid. There are different kinds of gravel. Some kinds would make a solid and perhaps even platform; some kinds would be apt to remain loose and uneven. Weather con-ditions would affect the gravel. Time of day or night might be an element making conditions dissimilar. The people would not all be alike. Every woman alighting would not weigh 167 pounds and be 57 years of age. Men, women, and children would detrain. Some would be tall, some short; some lean, some fat; some women would have long, some short, skirts. Some would have bundles, some not. In any view that can be taken of the excluded evidence it could have had no effect, except to confuse the jury and raise an endless number of collateral issues.

Regardless of dissimilarity of conditions and the injection of collateral issues into the trial, the proffered testimony would have been wholly irrelevant, because it would have had no tendency to prove that on the Magna platform on May 14, 1918, there was no loose gravel that slipped under respondent's foot, resulting in her fall and injury. The issue was appellant's negligence at the time of the injury, not whether other people thereafter were fortunate enough to avoid falling as they stepped upon the platform at Magna and thus escaped injury. Both upon authority and principle the testimony of the nonoccurrence of accidents after the date of Mrs. Barlow's accident would, in our opinion, be irrelevant.

Among other instructions given to the jury by the court was the following:

"The court instructs you that if the defendant stopped its car for the purpose of permitting its passengers to alight therefrom at the town of Magna, and if the defendant had carelessly and negligently permitted loose gravel and earth to be placed and remain below the steps of the car where plaintiff alighted from said car, and that in an effort to alight from said car while the plaintiff was in the exercise of ordinary care she stepped on said loose earth and gravel, and when she did so they gave way under her feet, and caused the plaintiff to fall, whereby she sustained the injuries complained of, then your verdict must be for the plaintiff in this action."

Defendant specially excepted to that portion of the instruction reading as follows:

"And if the defendant had carelessly and negligently permitted loose gravel and earth to be placed and remain below the steps of the car where plaintiff alighted from said car."

The quoted words are pronounced ambiguous, and it is argued that—

"A proper construction of the language is this, that the permitting of loose gravel and dirt to remain on the platform is described by the court as carelessness and negligence."

Appellant's construction might be placed upon that sentence, but it is not a reasonable construction when the instructions are considered as a whole. The words "carelessly and negligently" were superfluous. It might be said that the instruction conveyed to the jury the idea that the gravel and earth must be placed upon the platform in a negligent manner to render defendant liable, but that ·if the gravel were placed upon the platform carefully, skillfully, and gently the defendant would escape all liability. **13, 14** However, the instructions must be considered and interpreted together. The singling out of a particular instruction from the others, or a particular sentence or phrase from its context, for the purpose of giving it a meaning that cannot be gathered from the instructions when considered as a whole, is not allowable. In 1 Blashfield, Inst. Juries, § 38, p. 68, it is said:

"In determining whether an instruction is misleading, the

test is not what the ingenuity of counsel can at leisure work out the instruction to mean, but how and in what sense under the facts before them and the circumstances of the trial would ordinary men and jurors understand the instructions."

The construction placed upon the language of the above instruction by counsel is one that probably would not occur to the layman. The ordinary juror has average intelligence and everyday common sense. He may not be "in logic a great critic," nor "profoundly skilled in analytic," nor can he "distinguish and divide a hair 'twixt south and southwest side." He applies common sense to the solution of all problems before him, and does his best to keep inviolate his oath that he will "a true verdict render according to the evidence." It is unbelievable that the jurors were misled or confused by this instruction, or any part thereof, or that the defendant was deprived of any substantial right by the phraseology of the instruction that is criticized.

Another instruction which is criticized is the following:

"You are instructed that in determining whether or not the defendant furnished to the plaintiff a reasonably safe place to alight from its car, you should take into consideration the age and condition of the plaintiff, and what bundles she was carrying, if any, at the time she attempted to alight, also the distance of the lower step of defendant's car from the ground, and the condition of the ground at the place where plaintiff was required to alight from the defendant's car, and if you find from the evidence that the place where the plaintiff was required to alight from the defendant's car was unsafe and dangerous to the plaintiff under the circumstances and conditions as you find them to have been at the time of the injury, then you should determine whether or not under the circumstances the defendant, in the exercise of ordinary care, should have furnished a stool or other object upon which the plaintiff could alight, and also whether the conductor or some other employé of the defendant should have personally assisted the plaintiff in alighting from the car, and also whether or not the defendant should have warned the plaintiff of the dangerous condition of the landing, in order that the plaintiff might have taken greater care for her own protection."

The above instruction is condemned by counsel as erroneous in its statement that in determining whether or not the defendant furnished a reasonably safe place to alight from the

car the jury should take into account the age and condition of the plaintiff and what bundles she was carrying. The evidence regarding the age of respondent, her weight, and the bundles she was carrying at the time she alighted from the car was without conflict. Nor was there any conflict as to the height of the step from the ground. It was proper for the jury to consider these matters and all the circumstances and conditions as they found them to be at the time and place of the accident. In *Boa* v. *San Francisco-Oakland Terminal Rys.* (Cal.) 187 Pac. 2, which was an action for injury to a street railway passenger struck by a car from which she had alighted, an instruction that the jury should consider under the surrounding circumstances, including the age of the plaintiff, her knowledge and her ignorance of her surroundings, was held not prejudicial as singling out or bringing into prominence any isolated facts when the instructions were read as a whole. See, also, *Allender* v. *C., R. I. & P. Ry. Co.,* 43 Iowa, 276. In another instruction in the instant case the jury were instructed to weigh the evidence carefully and consider it all together; that they should not pick out any particular fact in evidence, or any particular statement of any witness, and give it undue weight, but that they should and could weigh inferences from facts proven as in fairness they thought they were entitled to. We do not think that the instruction is vulnerable to the objection that it was a charge on the weight of the evidence.

Instruction No. 18 was as follows:

"If you find that at the time in question the defendant stopped its car at Magna, the terminus of its road at that time, for the purpose of permitting the plaintiff to alight from said car, then you are instructed that the plaintiff, as she proceeded to alight from the car, had a right to assume, unless she was notified or observed, or by the ordinary care could have observed, to the contrary, that the defendant had exercised reasonable care and prudence in providing suitable means and methods by which she could alight from said car with reasonable safety."

The complaint regarding this instruction is that it is left to the jury to determine whether respondent had observed,

or could, by ordinary care, have observed, all of the conditions then and there present, and it is insisted that the evidence to which attention is called in the instruction is the evidence by the plaintiff, and it was uncontradicted that she had observed all the conditions then and there present. It is true that the respondent testified to all of the conditions. She even saw the loose gravel on which she stepped, but she did not see it until after she had fallen, and her testimony is uncontradicted that before she alighted her dress prevented her from seeing the platform at the place upon which she stepped. It was proper to give this instruction.

Another instruction is objected to because the court said that it was the duty of defendant to exercise such reasonable diligence, care, skill, watchfulness, and forethought in protecting the means by which the plaintiff could safely alight from its train as under all the circumstances in that particular service a careful, prudent man would exercise under the same or similar circumstances. It is suggested that the use of the words "careful, prudent" without qualifying them with the word "ordinarily" or "reasonably," was prejudicial error. This criticism is exceedingly hypercritical, and assuming that the words should have been modified as counsel suggests, the instruction still would not be misleading, and the absence of the word "ordinarily" or "reasonably" would be a trivial reason for reversing a jury's verdict when this particular instruction is read in connection with others. The care required of a railroad company is certainly of as high a degree as a "careful, prudent" man would exercise. The trial court's instructions on the care that railroad companies shall exercise in maintaining their platforms was decidedly favorable to appellant. It is a high degree of care which is demanded of railroad companies in this regard, and the district court would have been justified in adopting the rule which an eminent jurist, Judge John F. Dillon, laid down in *McDonald* v. *Chicago & N. W. R. Co.*, 26 Iowa, 124, 95 Am. Dec. 114, that as to the duty of railroad companies they are bound to

keep in a safe condition all portions of their platforms.and approaches thereto to which the public do or would naturally resort.

In instructing on the measure of damages the court informed the jury that if the verdict was in her favor plaintiff was entitled to such damages as would compensate her for all pain, suffering, and distress of mind and body, if any, which she had endured, or which she would endure in the future as a result of such accident; also injuries to her person received by her, if any, as a result of such accident; also for any permanent injuries sustained by her, if any, as a result thereof, together with all reasonable and necessary expense, if any, as shown by the evidence, which she paid or incurred for nursing and for medical expense in her attempt to relieve herself of the injuries sustained, and also any necessary and reasonable sum which she paid in removing herself from the place of injury to her residence, and from all the facts and circumstances as shown by the evidence to award plaintiff such an amount as would compensate her for all of the injuries and damages by her sustained. No evidence whatever was introduced showing the respondent paid anything for nursing or incurred any expense therefor. The jury knew what the evidence was, knew that nothing had been paid for nursing, and that there was no evidence of any obligation having been incurred therefor. There is no reason for thinking that when $2,999 was decided upon as the proper amount of respondent's damages an imaginary and conjectural amount for nursing was included. Technically the court erred in referring to expense of nursing. Nevertheless, we do not think that with the qualifying words "if any" the instruction could possibly be misleading. *Bergstrom* v. *Mellen*, 57 Utah 42, 192 Pac. 679.

Complaint is also made that the expense incurred by respondent for medical services and automobile hire were submitted to the jury, because there was no evidence that those charges were reasonable. Respondent testified that she paid $8 for an automobile to transport her from the place of injury at Magna to her home in Salt Lake City, and that she

paid $2 to Dr. Llewellyn and $35 to Dr. Allison, and $7 for an X-ray picture. When the bill of a physician is paid it is prima facie evidence of its reasonableness. Dr. Allison visited and treated the respondent 10 or 12 times while she was under his care. There was no issue as to the reasonableness of the charges of the two physicians. The evidence showing that the services of the physicians were necessary and the bills having been paid, it was sufficient to make out a prima facie case that the charges were reasonable. The automobile hire was also a necessity. Absence of direct evidence as to the reasonableness of the $8 charge for automobile hire is not sufficient to impeach the verdict in this case. The amount paid was some evidence of the reasonable value of this item.

During the opening argument of respondent's counsel to the jury he said that by reason of the injury by her sustained his client's power of earning a livelihood had been impaired. Upon objection to this language, and on request that the jury be instructed to disregard the statement of counsel, the court orally admonished the jury as follows:

"Gentlemen, in your consideration of this case, in case you find for the plaintiff, you will not consider any impairment of means of earning a livelihood as an element of damage. You will confine your consideration of damages wholly and entirely to the elements the court has enumerated in the written instructions thereto pertaining."

Counsel thereafter again, in his argument, repeated that the jury decreased his client's power of making a livelihood. Again objection was made to his remarks, whereupon the court instructed the jury in these words:

"The court has instructed the jury that that fact is not to be considered as an element of damage. There is no allegation in the complaint of damages by reason of lessened ability to earn a livelihood; the damages claimed are wholly from suffering, pain and permanent injury, mental and physical. It can't be considered as an element in reckoning damages, because there are no facts alleged concerning that in the complaint. The court repeats its instruction heretofore given, and, Mr. Smith, you will refrain from arguing that matter to the jury."

Here the incident ended.

It is urgently insisted that counsel's misconduct was willful and gross, that the argument was extremely prejudicial, and that although the court made efforts to correct the evil, the poison could not be removed, and that therefore a new trial should be granted.

Our experience is that when a lawyer enters into a controversy with the court during a trial in the presence of the jury the client of the pugnacious advocate is the one whose cause is injured. In the language of Mr. Justice Straup, in *Andrews* v. *Free*, 45 Utah, 505, 146 Pac. 555, Ann. Cas. 1918A, 475:

"It, however, is not to be presumed, in the face of the charge, that the jury rejected what the court told them, and accepted what counsel said."

While respondent's counsel should have accepted the court's ruling without at that time saying more on the subject than taking his exception, the fact that his argument was within the issues and based upon evidence is some excuse for his persistence. In *Atwood* v. *Railway Co.*, 44 Utah, 366, 140 Pac. 137, a personal injury case, it was held that when injuries sustained are fully described in the complaint, and that when from their nature and extent it is apparent that they would necessarily, for some time at least, deprive the injured person from following her usual vocation, and thus affect her ability to earn money, it was proper for the court to charge the jury that in the event they found for the plaintiff they should take into consideration the probable effect of her injury on her ability to earn a livelihood and acquire money or other property. In the instant case it is alleged in the complaint that the injuries sustained by plaintiff were permanent, and there was at least slight evidence to that effect. In the light of the pleadings and the evidence, and the opinion of this court in *Atwood* v. *Railway Co., supra*, respondent's counsel seems to have been within his rights in his argument; but, assuming that he was wholly wrong, it was not such flagrant misconduct as to call for anything more than an instruction to the jury and a rep-

rimand, which seems to have been effectively administered to the alleged offender.

When passing upon the motion for a new trial, and referring to the alleged misconduct of counsel, Hon. Wm. H. Bramel, the trial judge, said, inter alia:

"Upon more careful reflection, I am of the opinion that my peremptory instruction was too broad. It should have been, 'You may not reckon in or consider any loss of earnings,' etc. Impaired earning capacity or impaired ability to make a living is one thing. Loss of any specific salary, wage, or income is another thing. True, counsel was guilty of an act contrary to the court's advice, but this was error without prejudice. *Wooton* v. *Dragon Min. Co.*, 54 Utah 459, 181 Pac. 593."

Sixty-five errors have been assigned by appellant. We have given consideration to all of these 65 alleged errors, and have referred to all of them that are of any gravity, and some that are not. Those not noticed are wholly technical, and could not possibly constitute reversible error. No ruling of the court on the exclusion or admission of testimony was erroneous to the appellant's prejudice. The instructions by the court to the jury were clear and comprehensive. The verdict is fair and just, and supported by the evidence. The judgment is therefore affirmed, with costs to respondent.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.